Blaffer et al vs. Bank.

## No. 8044.

JOHN A. BLAFFER ET AL. COMMISSIONERS, ETC., VS. THE LOUISIANA NATIONAL BANK.

| 35 | 251 |
| 106 | 412 |

An exception to the capacity of the plaintiffs to sue as liquidating commissioners of a bank comes too late after answer has been filed. It must be pleaded before issue joined.

A settlement made by two banks through the Clearing House, in which checks are presented and exchanged, and a balance between them is struck, will be final and conclusive if either fails to give notice of inability to meet the balance against it on the general adjustment, before the hour when banks usually pass checks to the credit of their depositors. The mutual credits thus given cannot be recalled by either one to the detriment of the other.

APPEAL from the Fifth District Court for the Parish of Orleans. *Rogers*, J.

*Singleton & Browne* and *E. W. Huntington* for Plaintiffs and Appellants:

ON THE EXCEPTION.

1. We have shown that the exception filed is a peremptory exception as to form and must be filed *in limine litis.* R. C. P. 344-5.

2. That an exception denying the capacity of the plaintiffs to stand in judgment must be pleaded *in limine litis.* 12 La. 618; 6 Rob. 484; 11 Rob. 7; 19 La. 429; Act 1839, Sec. 23, p. 192; 3 An. 150; 3 M. 378; 2 N. S. 389; 5 N. S. 343; 1 La. 113-283; 14 La. 328; 7 La. 181; 2 An. 1017; 5 An. 332; 5 La. 40.

3. That the charter of a corporation established under the laws of this State may be declared forfeited at the suit: 1st, of the State; 2d, at the suit of a creditor; 3d, at the suit of the Auditor of Public Accounts; and its assets placed in the hands of commissioners, to be administered as insolvencies of individuals, without regard to the solvency or insolvency of the corporation. R. C. C. 447; R. S 284.

4. That the charter of a corporation may be declared forfeited when it abuses its privileges or refuses to accomplish the conditions on which such privileges were granted, in which case the corporation becomes extinct by the effect of the violation, "*ipso facto*" of the condition of the act of incorporation. R. C. C. Art. 447; R. S. Sec. 284; 13 La. 497.

5. That a definitive judgment cannot be attacked collaterally. That "definitive judgments may be revised, set aside, or reversed : 1. By a new trial. 2. By appeal. 3. By action of nullity. 4. By rescission." R. C. P. 556.

ON THE MERITS.

6. The checks of the Mechanics' & Traders' Bank could not be pleaded in compensation by defendant, because defendant did not own them; that they belonged to the depositors, and they were not parties to the suit. R. C. C. 2217-8.

7. That defendant did not acquire the checks on the Mechanics' & Traders' Bank, (if indeed it has ever acquired them) which is denied, it did not do so until after the declared insolvency of the Mechanics' & Traders' Bank and, therefore, defendant cannot plead them in compensation. 1 N. S. 48; 6 N. S. 66; 2 La. 84; 6 An. 587; 23 An. 36, 60, 112.

*Miller & Finney* for Defendant and Appellee :

A decree of forfeiture of the charter of one of the free banks, under Section 284 of the Revised Statutes, must be based upon an act of insolvency alleged of record, to give jurisdiction in a suit brought by a creditor of the bank, and there must be proof of the alleged facts. The non-payment of a check is not made an act of insolvency by the free banking act, nor is it an act of insolvency on general principles; there are often defenses for non-payment of checks, and where none exist the usual consequence is an action of damages by the depositor or check holder, not more. Morse on Banks and Banking, pp. 520, 522, 523, 524.

Hence, a petition for the forfeiture of the charter of a free bank, which merely alleges the non-payment of a check, exhibits no act of insolvency, and no cause for the forfeiture, within the scope of the statute.

No admissions in an answer filed by the counsel for the bank can serve as the basis for the decree of forfeiture of its charter, if allegations in the petition not denied are to be deemed admitted, (5th Robertson, 63) then the question is on the sufficiency of those allegations.

And if the decree of forfeiture is void, the appointment of Commissioners to wind up the Bank, based on that decree, also falls.

Peremptory exceptions to the absolute want of capacity of plaintiff to maintain the suit, based upon the nullity of the judgment appointing them, may be pleaded at any time, even after default. See Code of Practice, Articles 345, 346; Brown vs. Saul, 4th Martin's New Series, p. 434; Tarleton vs. Kennedy, 21 An. 501; 2d Hennen's Digest, p. 1167, § 2.

When two banks hold checks against each other, deposited by and credited to their respective customers, compensation takes place between them up to the amount they each hold, from the time that each bank accepts as offsets the checks on it held by the other.

It follows, too, that the credits which each bank has given to its customers, based upon checks received on deposit drawn upon another bank, become final, and cannot be revoked after the bank on which the checks are drawn has accepted and treated the checks as offsets against the checks it holds on the other bank.

Nor will the subsequent appointment of Commissioners to wind up one of the banks in the least affect the compensation between the two banks, and the credits given to depositors, perfected before the appointment of the Commissioners.

A credit by a bank to its customers, based upon checks by them deposited, is the same as actual payment, if the checks are drawn on funds, and are accepted as offsets by the bank on which they are drawn against the checks it holds, for if the bank on which the check is drawn treats it as offset to its own demand, it is the same as if it had paid the check. See Morse on Banks and Banking, p. 274.

The opinion of the Court was delivered by

MANNING, J. The plaintiffs sue in their alleged capacity of commissioners liquidating the affairs of the Mechanics' and Traders' Bank, and seek to recover $4,967.57, the amount of several checks drawn on the defendant Bank, and held by the Mechanics' and Traders' Bank on March 19, 1879.

The answer was filed November 3, 1879, and on the second day of the following April the defendant excepted to the capacity of the plaintiffs to sue for this, to-wit: that the judgment of forfeiture, under which the plaintiffs were appointed liquidating commissioners of the Mechanics' and Traders' Bank, is illegal, null and void, and that the charter of that Bank has not been legally forfeited.

The exception came too late. A long line of decisions has established that such exception must be pleaded before an answer is filed. Harper vs. Destrehan, 2 Mart. N. S. 389; Reynolds vs. Reynolds, 12 La. 618; Cheevers vs. Burke, 19 La. 429; Parker vs. Moore, 2 Ann. 1017; the latest affirmation of that rule of practice being Legendre vs. Seligman, not yet reported.

The litigation arose in this way. On March 18, 1879, the Mechanics' Bank received on deposit several checks, drawn by different persons upon the defendant Bank amounting to the sum claimed in this suit.

On the same day the defendant Bank received on deposit checks, drawn by various persons upon the Mechanics' Bank, amounting to $3,700.86. The defendant Bank credited its customers with the amounts of the checks deposited, as is the usual course when not notified to do otherwise.

At 9 o'clock the next morning, March 19, each Bank sent the checks it held to the Clearing House for the settlement of balances arising from deposits of the previous day. The settlement was made, each Bank receiving credit for the checks it held, and being charged with the checks held against it. The Clearing House struck the balance, and as between these two Banks the defendant was debtor to the Mechanics' and Traders' in the sum of $1,266.71. The checks, sent that morning by the Mechanics' to the Clearing House, were then despatched by the runner to the defendant Bank, and those sent by the defendant in like manner to the Mechanics'. This was about half-past 9 o'clock.

There were other checks on the Mechanics' Bank, held by other Banks than the defendant, sent to the Clearing House that morning at the same hour, and when the general adjustment was made between all the Banks, the Mechanics' was debtor to the amount of over twenty-one thousand dollars, and the manager of the Clearing House drew his check upon that Bank for that balance. This check was not paid. The manager was not apprised of its non-payment until between twelve and one o'clock, and the information came not from the Mechanics', but from the New Orleans National, it being the Bank that held the Clearing House check upon the Mechanics'.

By the rules of the Clearing House Association the hour for making exchanges is 9 o'clock A. M. Errors in exchanges, and claims arising from the return of checks from any cause, must be adjusted directly between the Banks that are parties to them, before 11 o'clock A. M. At 11.30 A. M. the creditor Banks receive the manager's checks on the debtor Banks in settlement of the respective balances due them. Should any Bank not be able to pay the balance against it, resulting from the exchanges of that day, such Bank must inform the manager and also the other Banks of such inability on or before 10 A. M. of the same day, and shall hold in trust until called for all checks received by it from the Banks at the morning exchange that day. As soon as the manager is informed of the inability of any Bank to pay his check drawn, or to be drawn, against it for balance, he must strike from the lists the exchanges, both debit and credit, of the defaulting member, and readjust the balance as though that member had not appeared for exchange on that day.

The manager was not informed by the Mechanics' Bank of its ina-

bility to pay the balance against it by 10 o'clock, or at all, nor did it give that information to the other Banks.  In consequence of not receiving it, the defendant Bank at 11 o'clock placed the checks upon the Mechanics', it had received the day before, to the credit of each depositor, subject to the drafts of each respectively.  The reason why the Mechanics' did not give this information to the manager was that it expected to be able to meet his check when it should be drawn later in the day.  Strenuous efforts were made to provide the necessary funds by the sale of exchange, by borrowing on collaterals, etc., all of which were unsuccessful.  Then, through proceedings before one of the courts, the regularity and legality of which is not under examination in this case, the plaintiffs were appointed commissioners to liquidate the Mechanics' Bank, and the sheriff took possession of its assets.  Immediately thereafter, about half-past two o'clock of the same day, Blaffer, one of the commissioners, and the cashier of the Mechanics', demanded payment of the defendant of the checks upon it, and the defendant offered to pay the difference between them and the checks it held against the Mechanics', as ascertained by the Clearing House adjustment that morning, viz., $1,266.71, which was refused. This demand is said to have been made by the request of the sheriff. On the following day, March 20, the sheriff, still in charge of the Bank, received that sum from the defendant, and the sheriff paid it to the plaintiffs on May 1st following.  Blaffer states that he received it, protesting against the sheriff's action in the matter.

The judgment below was for the defendant, and we think it correct.

The Mechanics' and Traders' Bank knew shortly after 9 o'clock what the balance against it was on the adjustment of exchanges that day, and neither informed the manager nor other Banks by 10 o'clock of its inability to pay it.  That Bank knew that the defendant, and all other Banks which on that morning held checks on it of the previous day, would pass them to the credit of depositors by 11 o'clock, or earlier, as soon as the Clearing House adjustment was made.  That was the usual course of business.  The defendant conformed its action to that order of business, in ignorance of the condition of the Mechanics', as it might well be, since that Bank hoped and was trying to meet the manager's check, which would be drawn later in the day on it for the balance on adjustment, the amount of which it already knew.

Not only was the defendant authorized, by this silence of the Mechanics' Bank, to treat the checks it held against that Bank as paid, but there was express and positive action to that effect.  The Mechanics', at 9 o'clock at the Clearing House, tendered and produced the checks it held on the defendant against the counter checks held by the

defendant on it, thereby declaring in effect to the defendant that the checks it held were treated as paid by the like amount of checks upon it, and this, regardless and independent of the rules of the Clearing House. The defendant acted on that, as it had a right to. These mutual credits could not be recalled afterwards by either one of the parties to the detriment of the other.

True, the Clearing House rule is. when the manager is informed of any Bank's inability to pay the balance against it, which information must be given by the crippled Bank by 10 o'clock A. M., that Bank must hold in trust all the checks received by it that morning from other Banks, and the exchanges both debit and credit of the defaulting Bank are stricken from the lists, and the balances are readjusted.

That is a rule for the guidance of the manager of the Clearing House, and cannot affect, much less control, the legal consequences of a virtual payment made by one Bank to another, or settlement each with the other in the ordinary business manner. Besides, the Mechanics' Bank forfeited or waived its right to the benefit accruing from that rule by not complying with an essential requirement of it, viz: giving notice by 10 A. M. to the other Banks, and thus bringing to the knowledge of the defendant its disabled condition. Had that been done, the defendant would not have passed the several checks to the credit of its depositors. The defendant could not have revoked those credits to the prejudice of its depositors. No more can the Mechanics' Bank, or those who claim to represent it, revoke its settlement to the prejudice of the defendant.

Judgment affirmed.