## No. 10,053.

### MRS. L. E. CLAIRAIN, INDIVIDUALLY AND AS TUTRIX, vs. WESTERN UNION TELEGRAPH COMPANY.

The claim of the widow and children of the deceased for damages was properly presented in a single suit.

It is indispensable to an employer's exemption from liability to his servants for the consequence of risks incurred, that he should be free from negligence. He must furnish the servants the means and appliances which the service requires for its efficient and *safe* performance; and if he fail in that respect, and an injury result, he is liable to the servant.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies,* J.

*W. S. Benedict* and *W. E. Murphy,* for Plaintiff and Appellee.

*Bayne, Denegre & Bayne,* for Defendant and Appellant:

1. The widow, individually, and as tutrix of her children, sues to recover damages for the loss of her husband, who was an employee of the defendant. Individually she seeks to recover the damages which she sustained, and the damages which the deceased sustained. As tutrix she seeks to recover the damages which the children sustained.

2. The exceptions should have been sustained. Under the Act of 1884, the widow cannot sue in her own right, and for her own use, for the damages suffered by the deceased where he leaves children. The right survives to her only when there are no children, and not jointly with them.

3. A telegraph company is not the insurer of its employees, and its obligations to them is to exercise reasonable and ordinary care in providing such suitable and safe apparatus as common experience shows to be proper in order to avoid exposing their lives to unnecessary danger in the discharge of hazardous duties. Towns vs. R. R. Co., 37 Ann. 634; Armour vs. Hahn, 111 U. S. Rep. 318; Randall vs. Baltimore and Ohio R. R. Co., 109 U. S 478.

4. The claim here is that the cross arm and wire were defective. The evidence shows that the cross arm was such as was in ordinary and common use, and such as had been used

for many years, and such as had been found to be the best for the purpose; that the wood of which it was made, and the manner of construction, were such as previous experience had shown to be proper, suitable and safe; that the wire was such as was and had been ordinarily used and found to be good, and had been used extensively just before and after the accident, and that this was the first and only time it broke.

Servants assume the ordinary risks of the employment upon which they enter, and as the wire and cross arm were such as were and are generally, commonly and constantly used, they assume the risks to which, if any, they may be thereby subjected.

5. If any injury befalls an employee by reason of a hidden defect which ordinary inspection and oversight would not detect, the master is not liable. It is one of the assumed risks of the employment. The servant takes the risk of any danger connected with the machinery or employment in which he is engaged, which ordinary inspection and carefulness on his part will disclose to him. 29 Ann. 791.

6. The servant is under the same obligation as the master to provide for his safety. It follows that, if the knowledge or ignorance of the master and that of the servant in respect to the character of the machine, etc., are equal, so that both are either without fault or in equal fault, the servant cannot recover of the master. Thompson on Negligence, pp. 1008 and 922; 6 Ann. 497; 125 Mass. Rep. 79, Cooley on Torts, 541.

This rule has been universally applied in cases of overhead bridges, depot roofs, machinery and appliances. 40 N. J. (Law), 23; 1 Lansing, 108; 63 N. Y. 449; 51 Maryland, 47; 50 Mo. 302; 78 Va. 709.

7. Moran (p. 31) and Borley (p. 120) say it is the duty of the lineman to put up cross arms, to reject them if they have any cause of suspicion, and to remedy anything they see wrong. McNulty, who put up the cross arm, was a fellow-servant of the deceased, in the same common employment. If McNulty was guilty of negligence, plaintiffs cannot recover.

The orders to the men engaged at block and tackle pulling up wires come from linemen. (McNulty, p. 76; Parsons, p. 87.) And the man at the reel is expected to look out for kinks. (Parsons, p. 114, and Donovan, p. 246.) Donovan, who was at the reel, was a fellow-servant in the same common employment. Kinks, if any existed, could be seen by ordinary inspection. In Randall vs. Baltimore and Ohio R. R. Co., 109 U. S. 482, there is a clear statement of who are fellow-servants.

8. "The servant who assumes the discharge of duties, the nature and mode of performing which are fully known to him, voluntarily subjects himself to risks necessarily incident thereto, and unless such risks are increased by some other fault or negligence of the master, injury resulting therefrom will not be the subject of reparation by the master." Wallis vs. Morgan's Louisiana and Texas Railroad Company, 38 Ann. 156; Satterlee vs. Morgan Company, 35 Ann. 1166; Rover on Railroads, 1198; Pierce on Railroads, 379; Wood on Master and Servant, 109 U. S. 484; Amour vs. Hahn, 111 U. S. Rep. 318.

9. The judgment gives interest upon damages, and should be reversed. 1 Ann. 382; 3 Ann 702; 18 Ann. 28; 38 Ann. 191.

---

The opinion of the Court was delivered by

Todd, J. Louis E. Clairain, in the employ of the defendant company, while engaged in putting up telegraph wires on Carondelet street, in this city, fell from a telegraph pole and was killed.

This suit is brought by the widow of the deceased in her own right, and as natural tutrix of her minor children, issue of her marriage with deceased, to recover damages on account of his death—damages

resulting from the sufferings of the deceased, and damages caused directly to the widow and children by the loss of the husband and father.

The cause and manner of the death is set forth substantially as follows:

That Clairain was employed by the company as a lineman in putting up and tying wires on their telegraph poles. That, whilst he was so engaged, some forty feet from the ground, and on a telegraph pole, it became necessary to stretch a wire on the outer end of a cross arm of the pole, their being five wires already strung on the pole, three on the inner and two on the outer side.

That in order to perform his work, it was necessary for him, by the aid of a steel spur or iron point, attached to one of his legs, to force the same into the telegraph pole as a support for his body, throw his other leg free of any iron support around the pole, and lean outward in a diagonal position from the pole to the outer wire of the arm attached to the pole, and there secure the telegraph wire with iron nippers or pincers, by a wire around the glass cup placed over the pin inserted in the cross-arm.

Whilst in this position, the wire being hauled taut many hundred feet ahead of him, by means of a reel and apparatus provided for that purpose by the company, the wire broke near the cross-arm at which he was ; the cross-arm itself broke where it was fastened to a telegraph pole, and by reason of his then necessary position, he could not recover his center of gravity when the break took place, and was precipitated head'ong to the stones beneath him. He was picked up and, after suffering intense agonies, died within a week, leaving a widow and three minor children as his heirs, deprived of his comfort, his support, his life.

It is specially charged that the wire furnished for the work which he was performing was second-hand wire, full of kinks, that is, where it had been twisted it had lost its strength, and that the cross-arm of the telegraph pole was of light material, too thin, improperly bored, and of such brittle nature as to be entirely unfit for the purpose for which it was used.

That Clairain has been for six years engaged in this business, both upon telegraph and telephone poles. That he was about thirty years of age, strong, active, and giving a regular support to his family.

The defendants excepted to the petition as follows:

1. That there was an improper joinder of parties upon distinct

causes of action, and that the widow and children of the deceased could not in the same suit claim the damages which each have separately and distinctly sustained.

2.   That the petition not specifying the quantum of damages suffered by the widow and the quantum of damages suffered by the children, and not giving any details or specifications of these damages, was too vague and indefinite to admit of proper answer and defense.

3.   That in so far as the widow claimed that the cause of action of the deceased survived in her, her petition disclosed no cause of action

The first and third grounds of exception were overruled, and the second ground was maintained, with leave to amend.

Thereupon plaintiffs filed an amended petition, which, "reiterating the allegations of the original petition, averred :

"1st.   That the damages sustained by the deceased, as hereinafter averred, survived in her minor children, of whom petitioner is natural tutrix.

"2d.   That she individually had sustained $5000 damages.

"3d.   That her children had sustained $5000 damages."

Defendant excepted that the supplemental petition, in so far as it alleged that the cause of the deceased survived in her minor children, was inconsistent with the original petition, and changed its substance.

This exception was overruled and the amendment allowed.

We think the ruling of the judge *a quo* on these exceptions was proper, considering that all the damages claimed resulted from one cause, and all parties in interest were before the court, and that the widow was suing both in her individual and representative capacities, and since a judgment final and conclusive as to all the parties could be rendered in the suit pending, it was better to end the controversy in the one suit than to remit the plaintiffs to two different actions.

The disposition made of the matter affords no just ground of complaint, and is sanctioned by several adjudications.   39 Ann., Riggs vs. Bell, and authorities therein cited.

The answer was a general denial and an averment of contributory negligence on the part of the deceased.

The case was tried by the judge, and from a judgment in favor of the plaintiffs for $3000 the defendant has appealed.

There were many witnesses examined on the trial, and there is much conflicting testimony.   We have thoroughly examined and considered it, and shall content ourselves with stating our conclusions respecting it, as it bears on the issues presented.

1.   We are fully satisfied that there was no contributory negligence

on the part of the deceased. There was no opportunity afforded him to test the strength and soundness of the wire and cross-arms furnished him, and which were required for the performance of the services for which he was engaged, and it is quite certain that had he insisted on making a sufficient test of them, and demanded that the requisite time be allowed him for that purpose, he would never have been employed. If there were defects in these materials it would have been impossible for him to have discovered them in the time that was afforded him. In fact, they were not discoverable on a slight inspection. There is no evidence of any want of care in the handling or manipulation of these materials in his work.

2. That both the wire and cross-arm broke in the manner described in the petition, there is no dispute, and that the death resulted from this breakage is equally admitted.

As stated, the testimony of many witnesses was taken to prove that those materials were perfectly sound, and *per contra* a number introduced to prove their unsoundness.

But, in our view of the matter the fact that they did break is a demonstration in itself that they were not sound, or at least of sufficient strength to answer the purpose for which they were used. For the evidence does not show satisfactorily that they were subjected to an extraordinary or unusual strain when the casualty occurred.

There was then no fault on the part of the employee.

It must be considered that the employment was a dangerous one, not dangerous in merely climbing or ascending the poles and reaching out to the ends of the cross-arms, and fastening the wires, but dangerous from the fact that the wire and its wooden support might chance to be defective and unsound. Those necessary for his work the employee had a right to presume were entirely safe, and he was entitled to rest on this presumption for his security. Hanson, tutor, vs. Railway, 38 Ann. 111.

And it further follows that the employment being a dangerous one, as conceded and asserted by the defendant's counsel, the defendant company, the employer, should be legally held to the greatest care and diligence in the selection of the necessary materials, and everything else calculated to insure the safety of the employee in the prosecution of his work. Ib. 10 Ann. 38 ; 14 Howard, 486.

" It is indispensable to the employer's exemption from liability to his servants for the consequence of risks thus incurred, that he should be free from negligence. He must furnish the servants the means and

Deslottes et al. vs. Telegraph Company.

appliances which the service requires for its efficient and safe perform-
ance; and if he fail in that respect, and an injury result, he is liable
to the servant as he would be to a stranger." Chicago R. R. Co. vs.
Ross, 112, U. S. R. 383.

The next question that arises is: Did the Company comply with
this requirement?

As stated, we are satisfied that the materials furnished the employee
in this instance were not sound, and consequently not safe; and the
record contains no evidence that these materials were carefully se-
lected by the company, nor is there satisfactory proof that there
was even a proper inspection of the same before being used.

Under these circumstances we are forced to the conclusion that there
was not that degree of care and diligence shown by the company that
under the legal principles we have announced, would exempt it from
liability for the fatal injury to its employee in this instance. It was
in fault, and from that fault resulted the death of the employee.

The judgment of the lower court is criticized by the defendant coun-
sel as not being in accord with the pleadings, nor in response to the
prayer of the petition in decreeing the amount awarded ($3000) jointly
in favor of the widow and the minor heirs.

This inaccuracy, if it be one, affords no ground of complaint to the
defendant. It does not impose an additional burden, and it is a mat-
ter of indifference to the company, to whom the money goes, so that it
is final and conclusive against all parties, which it is. There is no
complaint of the plaintiffs in this regard, and the money, when real-
ized, can be adjusted between the mother and her children, according
to their respective rights.

Reaching the conclusions announced, we find no reason for disturb-
ing the judgment of the lower court, and it is therefore affirmed with
costs.