No. 14,002.

WILLIE GUALDEN vs. KANSAS CITY SOUTHERN RAILWAY COMPANY.

SYLLABUS.

1. It is the duty of the master to furnish reasonably safe appliances required in the work he engages his servants to perform, and to keep them in good repair.

2. If a servant becomes aware of defects in the appliance, this knowledge alone, in case of injury, does not bar his recovery. Not only the defect, but the danger arising therefrom must be known to him, or be apparent to him.

3. The rule that an employee cannot recover where he chooses a dangerous method to perform a given work, after he has been shown a safe way, is held to have no application to this case.

4. A plaintiff's right to sue and stand in judgment must be challenged by formal plea tendered *in limine*.

APPEAL from the First Judicial District, Parish of Caddo.—
*Land, J.*

*Lee Emmett Thomas,* for Plaintiff, Appellant.

*Alexander & Wilkinson,* for Defendant, also Appellant.

The opinion of the court was delivered by .

BLANCHARD, J. Plaintiff, a colored boy, representing himself to be an emancipated minor twenty years old, brings this action seeking to recover of defendant company seven thousand five hundred dollars for personal injuries received while in the service of the company.

He was employed at the shops of the company in Shreveport as helper to the boiler washer, and was, on the day of the accident, directed by the latter, under whose authority he was, to blow off the steam from an engine which had just been brought into the shops from the road.

He alleges he proceeded to the discharge of this duty with care and circumspection when the hose attachment, by means of which the engine was to be blown off, burst asunder, with the result that the swinging end of the hose, driven with force by the escaping steam, struck him on the side of the head with great violence, knocking him down and off the engine.

He represents he was rendered unconscious, lay for several hours as one dead, was expected to die from the effects of the blow, remained in a comatose condition for several days, concussion of the brain followed, and it was months before he recovered the normal use of his mental faculties, and still longer before he recovered physical health and vigor.

The usual averment of pain and anguish, loss of time and wages, medical attendance, etc., etc., is made, as well as the allegation of fault on part of the company.

His contention is that the hose blew apart when the steam was turned on because of its defectiveness, being old and worn and certain connections thereof being lost or broken, and that he was not aware these defects rendered the hose dangerous.

For answer the company pleaded a general denial and charged contributory negligence on part of plaintiff.

The contention of the defense is that the hose did not burst asunder, and that the trouble was occasioned by plaintiff's failure to properly screw the hose together and by suddenly turning on a full head of steam. Further, that had plaintiff assumed the proper position and not unnecessarily exposed himself he would have escaped injury even though the hose did come apart by reason of the pressure of the escap-ing steam.

The case was tried by jury, who found for plaintiff and assessed his damages at five hundred dollars in the aggregate.

Both parties appeal—plaintiff for an increase in the quantum of damages; defendant in the hope of securing the reversal of the verdict and judgment.

*Ruling*—As it is not unusual in damage suits we find much conflict in the testimony. The case turns on the preponderance and weight of evidence.

The jury, who had the advantage of seeing and hearing the witnesses and the further advantage of having before them the hose attachment. with explanation of how the same fitted on the boiler and into the escape pipe, and an exemplification of how and where the break occurred, thought the weight of the evidence to be on the side of the plaintiff, and in this our examination of the case and appreciation of the testimony lead us to concur.

The appliance with which plaintiff was furnished in his work of blowing off the engine is shown to be defective, and while he had knowledge of the fact that it was not in good condition he did not know and was not apprised by the man placed over him by the master, and who ordered him to do the work with the means at hand, that the condition in which it was made it dangerous, and, therefore, is not to be presumed as having assumed the risk.

Not only the defect, *but the danger* must be known to the servant. This is the rule laid down by Mr. Wood in his work on "Master and Servant" at Sec. 376, and the same author, at Sec. 327, says:

"The servant, although he may know that the instrumentalities of the business are not in good repair or condition, is not necessarily chargeable with negligence in remaining in the master's employ and using them, unless real danger therefrom is apparent."

See also Myhan vs. Electric Light Co., 41 La. Ann. 964; Clairain

vs. Telegraph Co., 40 La. Ann. 182; Faren, Tutrix, vs. Sellers, 39 La. Ann. 1011; Daly vs. Kiel, 106 La. 170.

There is a rule of law that where there° are two ways of performing an act, one dangerous, the other not so, and the employee chooses the dangerous way and is injured, he cannot recover damages.

The defendant invokes this rule in support of his contention that the proper side of the engine for the plaintiff to be upon in blowing off the steam was the right side, and that inasmuch as he deliberately stood upon the left side in performing this duty, he unnecessarily exposed himself to greater danger and cannot recover.

But the jury were not satisfied from the evidence, nor are we, that the plaintiff was ever directed or instructed to stand upon the right side, or told that that was the safe side and the other unsafe.

Besides, it is in evidence that both sides of locomotives in the shops of defendant company are indifferently used by those engaged in the work of blowing off their steam.

If this employee had chosen a dangerous method to do this work after he had been shown a safe way, he would be debarred from recovery. Such was the rule applied in Jenkins vs. Maginnis Mill, 51 La. Ann. 1011. The facts of the instant case, however, do not warrant its application here.

With regard to the quantum of damages, the jury allowed $250 for loss of wages, and the same amount for pain, suffering and injury.

As to the first, it about suffices. The plaintiff was disabled about six months and was earning at the time of the injury about $45 per month.

As to the second, $250 is, we think, an under-estimate. The plaintiff was struck a terrible blow producing sustained unconsciousness, violent concussion of the brain. The physician thought the chances were he would die. He suffered greatly and was ill a long time. Five hundred dollars would be little enough compensation for this degree of injury.

As to defendant's contention, made only in argument, that plaintiff being a minor at the time he suffered the injury and during the resulting illness, his time belonged to his parents and they, not he, could recover the amount claimed under the head of loss of wages, it suffices to say that a plea denying a plaintiff's right to sue and stand in judgment must be formal and tendered in limine. 36 La. Ann. 750; 35 La. Ann. 251; 34 La. Ann. 850; 24 La. Ann. 404.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be amended by increasing the amount thereof from five hundred dollars to seven hundred and fifty dollars, with legal interest thereon from the 30th day of March, A. D. 1901, until paid, and that as thus amended the same be affirmed at the cost of the defendant in both courts.