(113 So. 454)

No. 26511.

## GRAPICO BOTTLING WORKS v. LIQUID CARBONIC CO.

May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. Sales ⬯5—Contract in form leasing filling machine for one year for $4,500, with option to then purchase for $1, held a sale.

Contract, which by its form purported to lease a filling machine for one year for $4,500, with the option to then purchase the machine for $1, *held* a sale, since it clearly shows that the parties intended to transfer the ownership of the property.

2. Estoppel ⬯78(2)—Designating sale contract a lease held not to estop either party from contending it was actually a sale.

Where a contract was designated a lease, but was in reality a sale, *held*, that neither party was estopped from so contending merely because they had designated it a lease.

3. Sales ⬯201(4)—Attempted rescission of contract for sale of filling machine, made after machine was loaded for shipment, held ineffective, though shipment was over two months late.

Where the buyer under a contract for the sale of a filling machine made no attempt to put the seller in default, when the shipment was delayed over two months after the time it was to have been made, *held*, that an attempted rescission of the contract, made after the machine was loaded for shipment, was ineffective, and the buyer was liable for the purchase price.

4. Sales ⬯176(1)—Buyer, acquiescing in delay in shipping filling machine, held not entitled to damages.

Where a buyer under a contract for the sale of a filling machine made no attempt to put the seller in default for a delay in shipment of over two months, and acquiesced in the delay, *held*, that he was not entitled to damages based on the delay.

5. Sales ⬯342—Seller held entitled to recover balance of purchase price of filling machine, where buyer acquiesced in delay in shipping.

Where buyer was not entitled to rescind sale of filling machine, because of delay in shipping, seller *held* entitled to recover balance of purchase price.

6. Appeal and error ⬯749—Supreme Court, allowing reconventional demand, cannot allow interest or vendor's privilege, where defendant did not pray for them.

Where defendant, in answering appeal, prayed that judgment be amended, allowing him his reconventional demand for balance of purchase price of filling machine sold, but did not pray that interest be allowed, or that he be allowed a vendor's privilege, *held* that, though the reconventional demand was allowed, neither interest nor a vendor's privilege could be allowed.

7. Costs ⬯172—Attorney's fees held not allowable as damages for defending suit.

Reconventional demand for attorney's fees as damages for defending suit *held* not allowable.

Brunot, J., dissenting. O'Niell, C. J., dissenting in part.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Fred M. Odom, Judge.

Suit by the Grapico Bottling Works, J. C. Kramer, proprietor, against the Liquid Carbonic Company; wherein the defendant filed a reconventional demand. From a judgment for defendant in the main suit and for plaintiff in reconvention, plaintiff appeals. Judgment amended by allowing defendant judgment in reconvention, and, as thus amended, affirmed.

Millsaps & Montgomery, of Monroe, for appellant.

Robert Layton and W. F. Pipes, both of Monroe, for appellee.

OVERTON, J. This is an appeal taken by plaintiff, J. C. Kramer, who is doing business under the name of the Grapico Bottling Works, from a judgment dissolving a writ of attachment, sued out by him, and rejecting his demand, and rejecting also a reconventional demand, filed by defendant. Plaintiff has filed no brief and has made no appearance in the case. On the other hand, defendant has answered the appeal within the time

prescribed by law, praying that the judgment be amended by allowing it certain amounts sued for by it in reconvention.

The case grows out of the following facts: Plaintiff and defendant signed a contract, dated November 14, 1920 (should be 1919), which purports on its face to be a lease, but which is, in fact, a sale. By it (to use expressions used in the contract) plaintiff agreed to lease from defendant for the term of 12 months for a total rental of $4,500, $450 of which was made payable on May 1, 1920, $675 on delivery, and the balance of $3,375 in installments, one 12-spout low-pressure filling machine, with certain appliances, electrically driven. It was agreed that delivery should be made "f. o. b. Chicago on or about June, 1920." Defendant agreed to install the filler, and it was stipulated that the contract should not be considered binding until the payment of the $450, which, by the terms of that instrument, was made payable on May 1, 1920. It was also agreed that plaintiff should pay the taxes on the filler while it was in his possession, and that, at the expiration of the 12 months period, plaintiff should return the filler to defendant in good condition, but should have the option of purchasing it for $1, instead of returning it, provided he had complied with all of the provisions of the lease. The contract also provided that defendant, in complying with its terms, should not be responsible for delays, caused by strikes, accidents, or other causes beyond its control.

On December 2, 1919, defendant wrote plaintiff that, due to the fact that a customer who had ordered the same kind of a filler that plaintiff had ordered, had canceled his order and given one for a larger sized filler, it would be in position to give him the benefit of that customer's shipping date, which was April 7, 1920, and desired to know whether the change would be satisfactory. It does not appear that plaintiff replied directly to this letter, but O. M. Wells, defendant's salesman, who procured the order, telegraphed defendant from plaintiff's place of business, some time in December, 1919, or January, 1920, to ship the filler March 1, or not later than April 15, 1920. Plaintiff's attention was called to the fact that, by reason of the change in the date of shipment, it would be necessary for him to make the payment of the $450, mentioned above, within 30 days prior to the date fixed for shipment; that is, by March 7, 1920. Plaintiff paid the $450 within the time fixed.

On April 7, 1920, the filler was not shipped, and shipment was not made until some time thereafter. On June 12, 1920, plaintiff telegraphed defendant, requesting it to advise him of some definite date when shipment would be made, and complaining that defendant was then 2 months late with the shipment. In reply to this telegram, defendant wrote plaintiff that it expected to have the filler ready for shipment about the 29th of June, and that the delay was due to the fact that it was unable to obtain forgings which were necessary to complete the raising cylinders on the machine.

On June 30, 1920, defendant loaded the filler on a car in Chicago, and had the bill of lading for the shipment signed the next day. In the late afternoon of the same day on which the bill of lading was signed, plaintiff telegraphed defendant as follows:

"Not having complied with terms of your contract with respect to delivery of low pressure filler you are directed not to ship same as it is too late for my use. Please return four hundred and fifty dollars deposited by us."

This telegram was not received until the next morning, which was July 2, 1920. On the day of its receipt, defendant telegraphed plaintiff that the filler had been shipped, and later mailed the bill of lading to a local bank, as provided in the contract, and wrote plaintiff, requesting him to call there and make settlement. This plaintiff failed or refused to do.

The filler on reaching its destination at

Monroe, remained in the possession of the railroad for some time. Whatever, if anything, was done to effect an amicable settlement failed, and in the latter part of October, following the arrival of the filler, plaintiff instituted the present suit, in which he sets out the contract, described above; the modification of it, as to the time of payment of the aforesaid sum of $450, and as to the date of delivery of the apparatus; the failure of defendant to ship the apparatus within the time fixed by the contract; the directions given defendant, because of such failure, not to ship; the damages caused him by that failure, which he fixes at $1,700; and his right to the return of the $450 paid by him. The day prior to the filing of the petition, plaintiff, upon affidavit made, obtained a writ of attachment, on the ground that defendant was a corporation domiciled out of the state, and later had a curator ad hoc appointed to represent it.

The filler was seized under the writ of attachment issued, and was left in the custody of the railroad. Demurrage was accruing against it, and defendant, as a conservatory measure, several months after the machine had been seized, obtained an order of court, authorizing it to bond the filler. The bond was executed, and the apparatus was shipped, to be stored in defendant's place of business, in Memphis, Tenn., subject to plaintiff's orders, where presumably it still is.

Defendant filed both an original and an amended answer to plaintiff's demand, and reconvened for $4,050, the balance due on the purchase price of the filler, for $300 attorney's fees, incurred by it for the purpose of having the suit defended, and for recognition of an alleged vendor's privilege on the filler.

[1, 2] In deciding the case, the first question to be considered is the nature of the contract out of which this litigation grows. As stated in the first part of this opinion, the contract, though couched in the phraseology of a lease, is in fact a sale. It contains the essentials of a sale, to wit, a fixed price, which was the rental to be paid, a thing to be conveyed, and the consent of the parties to the conveyance at the price fixed. The contract, we think, clearly shows that what is designated as the rental to be paid for the use of the machine, for the period of one year, is, in fact, the purchase price to be paid for it, and represents the full value of the machine. This, we think, appears not only from the contract as a whole, but especially from those parts of it which provide that the so-called lease shall be for a term of 12 months; that the consideration thereof shall be $4,500, and if, at the end of the lease, plaintiff should have complied with the contract in all respects, he should have the option to purchase the machine for one dollar. It is inconceivable that the contract in question would have been entered into upon any other theory than that the $4,500 was the amount to be paid for the ownership of the property, and not for its rental, and that the $1 consideration was a mere fictitious consideration, which it was never intended should be paid. The form of the instrument in such transactions is of little account in determining its nature. Hence, where the instrument, although written in the form of a lease, clearly shows that it was the intention of the parties to effect the transfer of the ownership of the property for a fixed price in money, denominated by them as rental or hire, the transaction will be deemed a sale and not a lease. State ex rel. Bulkley v. Whited & Wheless, 104 La. 125, 28 So. 922; Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193. Our conclusion is that the contract is one of sale, and not of lease. We may also add that we think neither party to the contract is estopped from contending that it is a sale, instead of a lease, by the fact that the contract entered into by them designates the transaction as a lease.

[3, 4] The next issue to be decided is whether plaintiff was justified in refusing to accept delivery of the machine by reason of the alleged breach of the contract by defendant in making delivery. While delivery was made "about June, 1920," as originally provided in the contract, yet this was some time after the date to which the making of it had been advanced on the suggestion of defendant, when it thought that it was in position to make delivery earlier than originally contracted for. On the other hand, while there was considerable delay in making delivery, according to the contract as modified, yet, when delivery was not made in April, to which time it had been advanced, plaintiff did not seek to cancel the contract, but, to the contrary, still desired it to be performed, and as late as June 12, 1920, telegraphed defendant, as we have seen, to fix some exact date when delivery would be made, and when, on June 16, 1920, defendant wrote plaintiff that it expected to ship the machine on June 29, 1920, plaintiff did not seek to cancel the contract, and made no attempt in that direction, until July 1, 1920, at which time defendant had, in good faith, loaded the machine on the car for shipment, and had the bill of lading signed. Under these circumstances, we think that plaintiff should have accepted delivery, and is not entitled to a rescission of the contract and to the recovery of the $450 paid by him, but should perform his part of the agreement. We moreover think that plaintiff is not entitled to the damages sued for by him, based upon the delay, consisting of 85 days in making shipment, for plaintiff acquiesced in the delay up to the time shipment was made, without even attempting to put defendant in default.

[5-7] The trial court rendered judgment rejecting the demand of plaintiff, and also the reconventional demand of defendant. There was no error, for the reasons stated, in rejecting plaintiff's demand; but defendant should have been awarded judgment in reconvention for $4,050, the balance of the purchase price of the machine. Defendant, in its answer to the appeal, has prayed that the judgment be amended so as to allow him that sum. Defendant is entitled to have the judgment amended in that respect. However, in so amending it, we are unable to allow defendant interest on that amount, for defendant does not pray that the judgment be amended by allowing interest thereon, nor are we able to allow defendant a vendor's privilege on the machine, assuming that it was originally entitled to one, for the reason that it does not pray that the judgment be so amended. Defendant, however, prays that the judgment be amended by allowing it $300 attorney's fees, which it is under obligations to pay for defending this suit. But defendant is not entitled to this amendment for attorney's fees are not ordinarily allowed for defending a suit.

The effect of this decision is, of course, to recognize plaintiff as the owner of the machine.

For the reasons assigned, the judgment appealed from is amended, by allowing defendant judgment in reconvention against plaintiff for said sum of $4,050, and, as thus amended, said judgment is affirmed.

BRUNOT, J., dissents.

O'NIELL, C. J., dissents on the ground that defendant is estopped to contend that the contract was a sale.