No. 4222

Second Circuit

DICKENS v. SINGER SEWING MACHINE CO., INC.

(March 16, 1932. Opinion and Decree.)
(May 4, 1932. Rehearing Refused.)

Argued before DREW, McGREGOR and STEPHENS, JJ.

A. B. Guthrie, of Monroe, and Allen Barksdale, of Ruston, attorneys for plaintiff, appellee.

Matthew C. Redmond, of Monroe, attorney for defendant, appellant.

STEPHENS, J.  On June 17, 1927, the plaintiff, Sarah Davis Dickens, purchased a sewing machine from the defendant, the Singer Sewing Machine Company, Inc., for the price of $92; said amount being credited at the time of the sale with $15, of which $5 was paid in cash and $10 was an allowance on an old machine owned by the plaintiff and delivered to the defendant.  Thereafter, from time to time, the plaintiff made payments to the defendant aggregating $66, which left a balance due on the purchase price in April, 1930, of $11.  At that time the machine was in the home of Ada Lewis, who was holding it for rent due by the plaintiff in the sum of $12; the plaintiff being temporarily absent.  Upon learning of these facts, the defendant, through its agents, informed Ada Lewis that the machine had not been paid for and therefore could not be held for her rent, but that they would pay her $5 thereon if she would permit them to take the machine, as it would cost that much to seize it.  She agreed to this and the agents paid her the $5 and took possession of the machine.

Upon plaintiff learning of these facts, she requested the return of her machine, but was informed, according to her testimony, that it had been sold; and that the amount she had paid on it had been lost to her.

On April 16, 1931, the plaintiff instituted this suit, alleging that she was a seamstress, and that due to her being unlawfully deprived of the possession and ownership of her machine, she had suffered damages in the sum of $400, for loss of earnings for 40 weeks at $10 per week; $350, for the invasion and violation of her constitutional rights; and $81, which she had paid on the purchase price of the machine.  She prayed for judgment for said amounts.

The defendant filed an answer in which it set up that it did not sell, but leased, the machine to plaintiff; and that contrary to the contract of lease, the plaintiff brought the machine from Crew Lake, in Richland parish, La., to Ouachita parish, La., where she abandoned it in the home of Ada Lewis; that it bought the rent claim of Ada Lewis, and having become subrogated to her rights and interest therein, removed the machine to its storeroom, where it still remained.

In the alternative, the defendant reconvened for the sum of $14, the alleged balance due it on the machine; and for the $5 paid to Ada Lewis on the rent.

On the day of trial, the defendant filed an exception of no cause or right of action, which was overruled by the court.

The trial resulted in a judgment ordering the defendant to return the machine to the plaintiff, and awarding her $50, as damages, less the amount of $11, which was held to be the balance due on the purchase price.

The defendant appealed and the plaintiff

answered the appeal, praying for judgment in the amount sued for.

The exception of no cause or right of action is founded on the proposition that the allegation in the petition that plaintiff was formerly the wife of George Dickens "but is now living separate and apart from him," is an insufficient statement of plaintiff's marital status, and that as there is no allegation in the petition of a legal separation, if a cause of action existed it was in the husband, the head of the community, and not the plaintiff.

The exception, while designated an exception of no cause or right of action, is in fact one of want of capacity to sue and stand in judgment; and came too late, as it was filed after issue joined. It should have been filed in limine litis, and was correctly overruled. Code of Practice, art. 333; Campbell v. N. O. City R. R. Co., 104 La. 183, 28 So. 985; Gualden v. K. C. S. Ry. Co., 106 La. 409, 30 So. 889.

The contract relating to the machine was one of sale, which vested the title thereto in plaintiff immediately ' upon its consummation. It is labeled a lease in large printed letters, and is written in the terms of a lease, but is clearly the usual form of conditional sale, with retention of title in the vendor, which the courts of this state have repeatedly construed as an unconditional sale.

The receipt given to plaintiff at the time the contract was executed, reads:

"Received from Sarah Dickens Fifteen dollars on account of written Contract No. Sale."

And on the reverse side of that receipt is the following:

Price of machine......$92.00
O. M. ......................... 10.00

_____

                                    82
Pd. ........................   5
                            _____
Bal  ........................$77 at $3.00 per month.

This receipt must be considered in determining the intent of the parties to the contract, and, when considered, leaves but little to the imagination. It was clearly the intent of the parties to transfer the ownership of the machine.

The Supreme Court in Grapico Bottling Works v. Liquid Carbonic Co., 163 La. 1057, 113 So. 454, 456, said:

"Hence, where the instrument, although written in the form of a lease, clearly shows that it was the intention of the parties to effect the transfer of the ownership of the property for a fixed price in money, denominated by them as rental or hire, the transaction will be deemed a sale and not a lease. State ex rel. Bulkley v. Whited & Wheless, 104 La. 125, 28 So. 922; Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193."

And again in Byrd v. Cooper, 166 La. 402, 117 So. 441, 442:

"An alleged lease, in which at the end of the term the lessee is to become the owner of the thing leased, in consideration of the rent to be paid, is in fact a sale translative of the property from its very inception."

The contention of the defendant that the plaintiff abandoned the machine, and that it therefore had the right to treat it as abandoned property, in which it had an interest, is without support by the facts and circumstances in the case.

What constitutes an "abandonment" as relates to property has been defined many times by the courts. We quote from 1 Words and Phrases, Third Series, p. 2, the following:

"Abandonment consists of the actual relinquishment of property, accompanied by an intent to part with it permanently.

Shepard v. Alden, 201 N. W. 537, 539 (202 N. W. 71), 161 Minn. 135, 39 A. L. R. 1094.

"An 'abandonment' is the relinquishment of a right, the giving up of something to which the owner is entitled, and must be made by the owner without being pressed by any duty, necessity, or utility to himself, but simply because he no longer desires to possess it; the giving up of a thing absolutely without reference to any particular person or purpose. Moore v. Sherman, 159 P. 966, 967, 52 Mont. 542.

"The characteristic element of abandonment is the voluntary relinquishment of ownership, whereby the thing so dealt with ceases to be the property of any person, and becomes the subject of appropriation by the first taker; it being in that respect distinguished from all other modes by which ownership may be divested. Commonwealth v. Koontz, 101 A. 863, 258 Pa. 64."

With reference to the possession of the machine, Ada Lewis, witness for the defendant, testified that it, and a Victrola, were left with her by the plaintiff to secure an indebtedness of $16 for rent. She quoted the plaintiff as follows:

"She told me I am going to leave. Says my machine. I will leave my machine and victrola here to secure you for my rent."

After leaving these articles for security, the plaintiff paid $4 on the rent, which reduced the sum to $12, which was the amount due at the time the defendant paid $5 to Ada Lewis and secured possession of the machine.

Certainly no element of abandonment is suggested by these facts; nor can it be reasonably assumed that the plaintiff would abandon a $92 sewing machine, and a Victrola. She was merely making a legitimate use of her property to secure her debt.

The agents of the defendant were fully aware of the facts and conditions which existed at the time they received possession of the machine from Ada Lewis, as shown by their testimony. The possession thus obtained, without due process of law, and without the knowledge or consent of the plaintiff, was an invasion and violation of her constitutional rights, and the defendant should be held liable for such damages as resulted therefrom.

Satisfactory proof that damages were sustained in excess of the amount awarded by the trial judge does not appear in the record.

We are of the opinion that the judgment appealed from does substantial justice between the parties, and it is therefore affirmed.

———

McGREGOR, J. (dissenting). On June 17, 1927, defendant delivered to the plaintiff at Crew Lake, La., a sewing machine. In connection with the delivery of the machine, an instrument of writing was executed and signed by the plaintiff and also by the agent of the defendant handling the contract. This instrument purports on its face to be a lease contract, but there is neither expiration date nor rate of rental stipulated. At the time of the execution of the instrument and the delivery of the machine, the plaintiff delivered to the defendant's agent an old machine valued at $10 and $5 in cash, for which two items there was delivered to the plaintiff by defendant's agent a receipt for $15. On the face of the receipt it is stated that the $15 is received on account of contract of sale. On the back of the receipt the defendant's agent made the following notation:

Price of machine____$92.00
Old machine_____ 10.00
—————
$82.00
Paid _____ 5.00
—————
Balance _____$77.00 at $3.00 per month.

Between the date of the contract, June

17, 1927, and October 26, 1929, the plaintiff paid to the defendant an additional sum of $66 in fairly regular monthly installments, thus making a total of $81 paid by her on her $92 contract.

As was stated, the machine was delivered to plaintiff at Crew Lake, but it was subsequently moved to the city of Monroe when the plaintiff moved to that city. While she was living in Monroe several different places were her homes and she took the machine with her each time she moved. In the month of February, 1930, she moved to Darnell in West Carroll parish and left the machine in Monroe with a woman named Ada Lewis, from whom she had been renting a room and to whom she owed the sum of $16 for rent. On or about April 21, 1930, the defendant, through its agent, paid to Ada Lewis the sum of $5 to be applied upon the plaintiff's past-due rent and received from her plaintiff's machine which she was holding as security for the rent due.

Plaintiff returned to the city of Monroe during the month of June, 1930, and about a week after her return she learned that her machine had been removed from Ada Lewis' house to the defendant's warehouse. Negotiations for the return of the machine were entered into, but for some reason she never gained possession thereof. On April 16, 1931, this suit was filed against the defendant, not for the possession of the machine, but for damages for the wrongful detention thereof by the defendant. Her demand for damages is as follows:

For loss of earning power ............... $400.00
For humiliation and embarrassment as aforesaid and for the invasion and violation of her constitutional rights ...................... 350.00
For the amount which petitioner had paid to said defendant to apply on the purchase price of said sewing machine........................................ 81.00
                                                          ————
  Total........................................................ $831.00

The defendant filed an exception of no cause or right of action, which was overruled. It then answered and denied all the allegations of the plaintiff's petition, and in addition thereto alleged:

(1) That the contract under which the plaintiff received the machine was a lease and not a sale.

(2) That plaintiff had abandoned the machine in the home of Ada Lewis, who was holding it to secure the payment of rent due to her.

(3) That defendant paid to the said Ada Lewis the sum of $5 and removed the machine to its storeroom for safe-keeping and protection of its rights.

(4) That it had offered to renew its lease contract if plaintiff so desired, but that she refused to accept the proposition and instead thereof demanded a large amount of damages which it refused to pay.

(5) In the alternative, it alleged that, if the contract should be held to be a sale and not a lease, there was a balance of $14 due on the purchase price, plus $5 paid for rent due Ada Lewis by plaintiff.

Defendant prayed that the suit be dismissed, and in the alternative, in case the original transaction be held a sale, that there be judgment in his favor for $14 balance due on the purchase price, and for $5 paid for rent due by plaintiff to Ada Lewis, and that defendant's privilege (vendor's and lessor's) be recognized and maintained.

On trial in the lower court there was judgment in favor of the plaintiff ordering

the return of the machine and for $50 damages, less a credit of $11, balance due on the machine. The defendant appealed and the plaintiff answered the appeal asking that the judgment be amended in accordance with her original demand as set forth in her petition.

## OPINION

The contract under which the machine was delivered to the plaintiff in the first instance was clearly a sale and not a lease. Even though the words used refer to a lease and not a sale, the instrument itself provides neither expiration date nor rate of rental. But the first receipt issued stipulates that the price of the machine is $92, that $15 was paid at the time of the sale, and that the balance was payable at the rate of $3 per month. Clearly, these monthly installments were payments to be credited on the purchase price and not on a rent account.

Plaintiff's demand for damages is based on her allegation that defendant entered her premises without legal right and took possession of the machine and removed it without her knowledge or consent. She alleged that she was a seamstress by trade and that because of the removal of the machine she had been deprived of her means of earning a living. It is not shown by the evidence that plaintiff ever earned anything by the use of the machine. During the time she was living in Monroe she did not make a living with it or anything else. She left there in February, 1930, because of her failure to earn a living, and did not return until some time in June of the same year. During the period of her absence she made no provision for the payment of the balance due on the machine, but left it with a woman as security for rent. Her allegation that defendant entered her premises without any legal right is not supported by the testimony, for as a matter of fact she had no premises to be entered. She had aban-

doned the machine and left it in the possession of Ada Lewis, the woman to whom she was indebted for rent. Ada Lewis' possession of the machine was legal and with the knowledge and consent of plaintiff. If Ada Lewis was unable or unwilling to keep the said machine in her possession, she had a perfect right to deliver it to defendant, provided none of the plaintiff's rights of ownership were violated. Plaintiff could assert her rights equally as well with the machine in defendant's storeroom as she could while it was at Ada Lewis' house. No right of action for damages could arise by simple transfer of possession from Ada Lewis to the defendant. Furthermore, defendant had a vendor's lien upon the machine and had a real interest in protecting and preserving it from loss or deterioration. When it found it abandoned in another woman's home subject to the payment of rent, it had a perfect right to take possession of it by paying this woman any sum of money which was due her and which she was willing to accept, provided, of course, that it should take perfect care of it. It cannot be denied that the machine was safer in defendant's hands than it was in Ada Lewis' home.

The last payment that the plaintiff made on the machine was on October 26, 1929. She abandoned it and moved to Darnell in the month of February, 1930, and never returned to Monroe until some time in June, 1930. During that time defendant was naturally anxious about the balance due to it, but was unable to collect anything. Its agent went to see Ada Lewis several times, and she told him that she had heard from the plaintiff and that she had promised to send some money both for her and for defendant. Finally, on April 21, 1930, defendant's agent paid Ada Lewis $5 on her rent claim which she held against the machine and took it to its storeroom. No rights were violated

in so doing. Plaintiff was just as much the owner of the machine as she ever was. No disposition was made of it other than to store it for safe-keeping.

Plaintiff testifies that when she learned that defendant had her machine she went to its office in Monroe and offered to pay the balance due and demanded the return of the machine, but that defendant refused to accept the money or to return the machine. There is no testimony on this point except plaintiff's, and, in view of all the circumstances of the case, her testimony alone is not sufficient to warrant a judgment against the defendant. As soon as the matter was brought to the attention of the manager in charge of this office, Mr. T. A. Arrington, before the suit was filed he offered and was willing to deliver the machine back to the plaintiff provided she would pay the balance due on the account. He stated further that at that time he agreed to waive the repayment of the $5 that had been paid to Ada Lewis on rent due by plaintiff. This was a fair and equitable proposition, but appears to have been rejected in the hope of securing judgment for damages.

In his brief counsel for the plaintiff, appellee, cites and relies upon Act No. 62, Extra Sess. of 1877. That statute has no application in this case. It refers particularly to entering premises of person to whom property has been sold with the object of removing said property under the assumption or pretense that the buyer had by agreement given the right of entry and removal. No such contention exists here. Defendant did not enter the premises of plaintiff, for she had no interest in or control over the premises where she left the machine; that was the property of Ada Lewis. Defendant found the machine on which it had a vendor's lien in the possession of Ada Lewis, being held by her subject to her lessor's lien. Under those circumstances defendant had a perfect right to bargain with Ada Lewis by paying her rent claim against the machine and taking possession of the same for safe-keeping, particularly so since plaintiff had apparently abandoned it for weeks or months and had gone to live in a distant parish. If this act applies to this case, then defendant and its agent were subject to prosecution criminally for what they did, as the act is a criminal one and provided only for criminal prosecution and stipulates merely that the act shall not deprive the injured party of a civil action for whatever damages he may have suffered. The case of Luthy v. Werlein, 163 La. 752, 112 So. 709, is cited. There is no comparison between the two cases. In that case the seller entered the home of plaintiff during his absence and removed a piano on which there was a balance due. The defendant had no semblance of right to the possession of the piano and to declare forfeited all payments made. In that case defendant went so far as to compel the plaintiff's minor daughter to sign a document relinquishing, in her father's name, all right, interest, and equity that he might own in the piano. Nothing like that was done in this case. Defendant did not enter the premises of plaintiff. No rights of plaintiff in the machine were changed, jeopardized, or forfeited. The possession of the machine was delivered to the defendant by one who had a right to it and in a way in which she had a right to do. There was no invasion or violation of constitutional rights. Counsel also cites the case of Van Wren v. Flynn, 34 La. Ann. 1158. That was an outrageous case. Plaintiff had bought from defendant a set of furniture and for the balance of the purchase price had executed and delivered to the defendant certain promissory notes maturing on consecutive dates. In discussing the case the court said:

"Shortly before the maturity of the first

note, on account of the illness of his wife, plaintiff, under medical advice, took her to Tangipahoa Parish, on the Jackson Railroad. On leaving, he sent a messenger to defendant, informing him of the cause of his departure, and stating that upon his return, he would settle his bill; to which the defendant made no objection. Owing to continued ill-health of his wife and other sickness in his family, his absence was prolonged until nearly a month after the maturity of the last note.

"In the meantime, the notes had all matured, and defendant had several times sent his collector to plaintiff's house without finding him; but it does not appear that he made any other effort to communicate with him or to notify him of his intention to retake the furniture, if not paid.

"On the 27th of September, defendant went to plaintiff's house with a wagon and several men; entered the same, which was then occupied by plaintiff's mother, sister, and sister-in-law; informed these ladies that he had come to take the furniture, and disregarding their statement that Wren's return was expected and their request that he should wait until his return, he caused the contents of the furniture to be taken out, and removed and carried away the same.

"That same night defendant (should be plaintiff) returned with his invalid wife and children, and found their sleeping apartments denuded of furniture, so that they were compelled, in order to find accommodation, to send off some members of his family to other quarters.

"It is in evidence that plaintiff had provided himself with means to pay for the furniture and had returned with that purpose, according to the assurance which he had conveyed to defendant when he left the city, and to which the latter had not objected.

"No one appreciating the jealous care with which our law guards the sacredness of every man's house and his lawful possession of property against invasion or disturbance, otherwise than by proceedings taken under the sanction and through the agency of the public justice, can question that unless removed from its general principles by the effect of the agreement set up in defense, the acts which we have detailed constituted a gross outrage upon the rights and feelings of plaintiff, as a citizen and a man, for which courts of justice must either grant redress or sanction the personal exaction of satisfaction by violence."

Even by the widest stretch of imagination, it cannot be said that any such condition exists in the present case. The jury in the cited case awarded damages in the sum of $750 and the award was upheld by the Supreme Court on appeal. In the case of Jenks v. Howe Sewing Machine Co., 34 La. Ann. 1241, suit was brought for damages based on this same Act No. 62, Extra Sess., of 1877, and in refusing to grant damages to the plaintiff, the court said that it is very plain that the act was not intended to inflict penalty or liability in damages except for *trespassing and forcibly carrying away property against the will and protest of the transferee.* No such condition existed in the case under consideration, and there can be no penalty inflicted or damages awarded.

For these reasons I most respectfully dissent from the conclusion reached in the majority opinion affirming the judgment of the lower court, awarding the plaintiff damages in the sum of $50. Undoubtedly plaintiff is entitled to judgment ordering the return of her machine and that is sufficient to put the costs of the case on the defendant. In my opinion, the payment of these costs is all that defendant should be forced to pay for the possible wrongful detention of the machine in question. No actual damages were proved in my opinion, so that the assessing of $50 damages against the defendant is in the nature of punitive damages and is unjust and clearly unauthorized under the law. The delivery of the machine back to the plaintiff should be conditioned upon the payment by her of the sum of $11, balance due on it, and the refunding of the $5 rent that defendant paid for her in order to get possession of the machine.