HAMITER, Justice.
 

 To insure payment for all milk sold by producers to it, each distributor of that product within this state is required by Act No. 318 of 1940 to furnish a bond or other security, the security to be approved by the Commissioner of Agriculture and Immigration of the State of Louisiana and to be filed by him and retained in his office subject to public inspection. Pursuant to that requirement, the Loranger Milk Plant, Inc., as principal, and so referred to hereinafter, executed a bond on September 9, 1941, in the sum of $5000 with the New Amsterdam Casualty Company of Baltimore, Maryland, as surety.
 

 On September 24, 1942, thirty-seven milk producers joined in instituting a suit (No. 10,774 on the docket of the District Court) to recover the total sum of $9519.33, the petition describing the indebtedness to be for “milk sold and delivered to the said Loranger Milk Plant, Inc., at Hammond, Louisiana, from March 31, 1941, up to and including April 25, 1942, as will more fully appear by an itemized account attached hereto and made a part hereof.” They pray for a solidary judgment against said prin
 
 *295
 
 cipal and surety on its bond in the full sum of $5000, with 5% per annum interest from judicial demand until paid, plus statutory penalties and attorneys fees. Additionally they ask judgment against the principal in the further sum of $4519.33, together with interest thereon from judicial demand.
 

 The principal, Loranger Milk Plant, Inc., through its liquidator, answered by denying all of the allegations of the petition; and, to quote its special averments, “further answering and in reconvention and intervention your liquidator shows that if any recovery is made upon said bond in question then and in that event that the proceeds thereof should be turned over to him as liquidator for the purpose of distribution according to law in such cases made and provided, showing that this bond constitutes assets of the Loranger Milk Plant, Inc., that he is the legally qualified liquidator and as such is entitled to recovery and distribution of the proceeds thereof together with' other assets of the liquidation he represents.”
 

 The surety entered a general denial to the allegations of plaintiffs.
 

 On November 16, 1942, almost two months after the above suit was commenced, the surety deposited in the registry of the district court the sum of $5000, the amount of its bond. Also, on that day, it filed an interpleader proceeding, praying “that the hereinabove named individual claimants and L. M. Cook, as Liquidator of the Loranger Milk Plant, Inc., be cited to appear herein and to assert their claims against the fund so deposited and that if there be anything in excess of the amount due to the claimants, that such excess up to the -penalty of the bond be returned to petitioner, and petitioner further prays for judgment against all the hereinabove named parties and against Harry D. Wilson, Commissioner of Agriculture and Immigration, dismissing it from all liability of whatsoever nature and kind under said bond and against all persons who might or could have a claim thereunder.”
 

 In the interpleader proceeding, the thirty-seven plaintiffs named in the first suit tendered a joint answer in which they pray for judgment against the surety in accordance with their original demands.
 

 The two causes were consolidated, tried together, and decided as one suit. There was judgment in favor of twenty of the thirty-seven claimants against the principal and surety, in solido, in the sum of $5000, pro-rated in the amounts set opposite the respective names of those twenty, together with 5% per annum interest thereon from judicial demand. Further, the surety, individually, was condemned to pay to the mentioned twenty as penalties an additional amount of 3% per month from August 1, 1942, until paid, on the sum due to each, plus 10% of the sum, interest and penalties as attorneys fees. Also, there was judgment in favor of all thirty-seven claimants against the principal, individually, for the amounts set opposite their respective names, with 5% per annum interest from judicial demand. Additionally, the reconventional demand of the principal and the interpleader proceeding (No. 10,882) brought by the surety were ordered dismissed; and the principal and surety were cast in solido for
 
 *297
 
 all costs of court, except the costs of the reconventional demand for which the principal alone was held liable.
 

 Both the principal and the surety were granted orders of suspensive appeal; however, only the appeal of the surety was perfected.
 

 In the brief of appellants’ counsel, we find the following:
 

 “The New Amsterdam Casualty Company is concerned with fulfilling its obligations fairly and equitably. Its $5000 bond should be distributed among the thirty-seven milk dealers and not given to only twenty.
 
 In making this contention, it can have no selfish purpose since it admits its liability for the full amowit of the bond and, therefore, could gain nothing by the method of its distribution.”
 
 (Italics ours)
 

 There can be no question, in view of that statement, that the full amount of the bond ($5000) is due and owing by the surety to some or all of the thirty-seven claimants who instituted the first above mentioned suit. As to whether it was properly pro-rated by the trial judge among only twenty of them is a matter that is not before us for consideration and one about which appellant can now have no legal complaint. None of the claimants have appealed or filed answer to the surety’s appeal; and it must be said that the judgment as to them has been acquiesced in and is final. Grapico Bottling Works v. Liquid Carbonic Co, 163 La. 1057, 113 So. 454; Stubbs v. Bain, 173 La. 544, 138 So. 96; Goldberg v. Banta Bros., 183 La. 10, 162 So. 786; Cox v. First Nat. Bank in Arcadia, 195 La. 963, 197 So. 616.
 

 There is merit, however, in the challenge of the surety to that part of the judgment which condemns it to pay an additional amount of
 
 3%
 
 per month from August 1, 1942, until paid, on the sum due to each claimant. This penalty was imposed under the authority of Act No. 37 of 1921, Ex. Sess, the title and first section of which read:
 

 “An Act to require bond companies to make an adjustment and payment within sixty days after notice of all just and legal demands against them for shortage, defalcations and misappropriation of funds by those for whom they are or may become surety, and to provide penalties for the violation of this act and to repeal all conflicting laws.
 

 “Section 1. Be it enacted by the Legislature of Louisiana that in all cases where any Fidelity, Surety or Bond Company is authorized to do business in the State of Louisiana and is now or shall become surety for the faithful performance of the duties of any employee, bailee or other person holding a position of trust or occupying a fiduciary capacity and the said person shall become liable or responsible on account of embezzlement, misapplication of funds, defalcation or for any other cause that shall make the said surety company responsible therefor under its bond, it shall be the duty of the employer or the person to whom the said bond is made payable to notify the bond company in accordance with the requirements of the bond after the liability shall have been discovered, to be followed as soon as possible with detailed information concerning the amount of the loss sustained by the principal
 
 *299
 
 through the said employee, bailee or other person occupying a fiduciary capacity, which notice shall be sent by registered mail to the head office of the bond company that appears as surety for the same, or to’ any duly authorized agent of said bond company in the State of Louisiana.”
 

 From these quoted provisions, it is clear that the statute applies only to bonds given in connection with fiduciary relationships. Therein reference is made solely to a company that shall become surety for a person holding “a position of trust or occupying a fiduciary capacity”. In this cause the security involved is not of that character. The relationship between the milk producer and the distributor is merely one of creditor and debtor. Act No. 318 of 1940, which requires protection for the producers, states that the bond to be furnished is for the payment of all amounts for milk sold by the producers to the distributor and that any producer to whom money is due for milk sold shall have full recourse on the bond. A form of insurance is thereby provided for the benefit of the unpaid milk producer; and there is nothing in the statute to indicate an intention on the part of the legislature to create a fiduciary relationship between the producer and the distributor. Consequently, as Act No. 37 of 1921 is inapplicable here the penalties prescribed therein were erroneously inflicted on the surety.
 

 Appellant next complains of the judgment in so far as it awards attorneys fees of 10% on the principal amount, interest and penalties.
 

 Act No. 225 of 1918 provides that one having a claim on a bond “who has employed an attorney shall be entitled to recover, and the court shall award, ten pefi cent attorneys fees on the amount recovered, provided that the said ten per cent attorneys fees shall only be recoverable where the full amount claimed by the suitor is recovered, and that the said suit may only be filed, where attorneys fees are-sought to be recovered, after amicable demand for payment has been made in writing on the principal and surety, and thirty days shall elapse from the receipt, of said notice by the principal and surety from the claimant without payment being made.”'
 

 Obviously, the allowance of attorneys fees on the above discussed penalty of 3% was improper, this for the reason,, as before shown, that the act granting that penalty is not applicable here. But the-court, we think, correctly ordered the payment of 10% attorneys fees on the full' amount of the bond and interest.
 

 In April of 1942, so the evidence shows,, the claims of all of the thirty-seven producers were placed
 
 in the
 
 hands of their-present counsel for collection; and to that end Mr. Tycer, of such law firm, visited the-offices of the surety in New Orleans. Am adjuster was immediately sent to Hammond, Louisiana, where he investigated the-claims and received itemized statements.
 

 On May 21, 1942, as no settlement had' been made, that attorney made written-formal demand on the surety. Another-adjuster then went to Hammond, and he,, along with Mr. Tycer, visited the offices of the Loranger Milk Plant, Inc. There-the books of the distributor were made accessible to and studied by him, and he was.
 
 *301
 
 furnished with a copy of the account of •each of the thirty-seven producers. While •on this visit, the adjuster admitted liability •of the surety to the full amount of the bond; but, because of a disagreement between him and the attorney as to whether the $5000 should be pro-rated among all or only some of the thirty-seven claimants, he stated that the amount would be paid into the registry of the court and an interpleader proceeding instituted. To avoid this litigation, as well as to receive immediate payment for his clients, the attorney suggested that the draft be made payable to and endorsed by the thirty-seven producers (he represented all of them) and, further, he offered to obtain from each a written release respecting the surety’s obligation; but the adjuster refused this proposal.
 

 A lengthy period of time elapsed without payment of the claim or the commencement of the promised interpleader suit, notwithstanding the continual insistence of claimants’ counsel through telephone calls and letters; and-on September 24, 1942, the suit to enforce collection and to recover statutory penalties was filed. The interpleading of the parties by the surety occurred almost two months later.
 

 The reason why the surety did not settle with the claimants under the proposal of their counsel to furnish releases from all thirty-seven, or why it did not initiate the interpleader suit within sixty days after receiving copies of the producers’ accounts, is not made clear by the record or by the argument of its counsel.’ We know of no good reason. Having failed to pursue either of these methods, thus compelling a filing of the suit on the claims, the surety is, we think, responsible for the attorneys fees prescribed by the Act No. 225 of 1918.
 

 Counsel direct our attention to that part of the statute which says that the attorneys fees “shall 'only be recoverable where the full amount claimed by the suit is recovered”; and they show that the amounts allowed by the court to the respective claimants are vastly different from the original amounts claimed. This difference exists because the bond does not equal the total amount due to all of the producers furnishing milk during the bond’s effective period, and a pro-ration of the $5000 among them was necessary.
 

 It is also argued, to further quote from the brief of appellant’s counsel, that:
 

 “There is no proof in this record that demand in writing was made “on the principal and surety”.
 
 Before the penalties can be asserted, the plaintiffs in this case must show that they made demand on Loranger Milk Plant, Inc., in writing.
 
 They must also show that they made demand on the New Amsterdam Casualty Company in writing.” (Italics ours)
 

 This argument is predicated on that portion of Act No. 225 of 1918 which conditions recovery of attorneys fees on the making of demand in writing on the principal and surety and the elapse of thirty days without payment. A written demand, according to the evidence, was made upon the surety; but none was given to the principal. Irrespective of this, however, the statutory provision referred to is personal to and for the benefit of the surety and can be waived; and, in our opinion, there
 
 *303
 
 has been a waiver of it. As above shown, some months before suit was filed the surety investigated the claims, had access to all of the books of the debtor corporation, received copies of the individual accounts, and promised payment to the full amount of its bond. Under these circumstances, the making of a written demand on the principal would have been a vain and useless thing.
 

 After this cause was orally argued and submitted in this court on behalf of the claimants and the surety, counsel for the liquidator of Loranger Milk Plant, Inc., filed a brief asking that the reconventional demand, rejected by the district court, be recognized and sustained. Under that demand, the liquidator contends that the bond in question “is an asset of the liquidation and should be collected and administered by the liquidator for and on behalf of the creditors”. Inasmuch as the liquidator did not perfect an appeal from the adverse judgment we seriously doubt that the reconventional demand is before us for consideration. But if it is, there appears to be no merit in the contention made thereunder. The statute (Act No. 318 of 1940), requiring the furnishing of the security, provides that the producers of milk shall have full recourse on the bond for the amounts that may be due to them.
 

 For the reasons assigned, the judgment appealed from is amended by striking therefrom that portion which condemns the New Amsterdam Casualty Company to pay to the respective claimants the penalty of 3% per month on the sum due to each, as well as the 10% attorneys fees on that penalty; and, as amended, the judgment is affirmed. Costs of this appeal are to be paid by the twenty appellees or claimants to whom recovery on the bond has been granted.
 

 PONDER, J., recused.