MILCHEM, INCORPORATED, Plaintiff,

v.

M. A. SMITH WELL SERVICE, INC., Defendant.

Civ. A. No. 70–2219.

United States District Court, E. D. Louisiana.

Dec. 11, 1972.

**1308**

H. Gordon Hartman, Many, Hartman & LoCoco, New Orleans, La., for plaintiff.

Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, La., for M. A. Smith Well Service, Inc.

James J. Morse, Bruce J. Borrello, Robert J. Neal, New Orleans, La., for Liberty Mut. Ins. Co.

CASSIBRY, District Judge:

The issue presented by this suit grows out of the total destruction of a degasser and a hoist during a misguided attempt to make the degasser secure prior to the onslaught of Hurricane Camille. I found that this loss was due to the negligence of defendant M. A. Smith Well Service, Inc. The hoist was owned by Milchem, Inc., the plaintiff in this action. The degasser in question was the property of Southern Fleet Leasing Corp., and at the time of the incident M. A. Smith was operating the equipment as a sub-lessee. This property was insured against "all risks" by one of two policies carried by Southern Fleet. The problem remaining in this case is that the insurer, Liberty Mutual Insurance Company, seeks to recover by way of subrogation against M. A. Smith, who contends that this is not permissible as it is an insured under the policies in question and that an insurer may not recover against its own assured under Louisiana law. Lanasse v. Travelers Insurance Co., 450 F.2d 580, 585 (5th Cir.

1971) ; Boston Insurance Co. v. Pendarvis, 195 So.2d 692 (La.App.1967).

Whether M. A. Smith is an insured is not easily answered. Southern Fleet carried two policies on its equipment, a "single interest floater," and a "dual interest floater." The latter contains the following language:

## I. NAMED INSURED

The "Named Insured" in this policy is Southern Fleet Leasing Corporation and all wholly owned subsidiary companies thereof, as now or may hereafter be constituted, hereinafter called the "Insured."

## II. INTERESTS INSURED

This policy covers the interests of the Insured, and any lessee as their respective interests may appear.

M. A. Smith admittedly does not fall within the definition of a "named insured" under this policy. It claims the status of an assured, however, because its "interest" as a "lessee" is insured under the policy.

The fact that M. A. Smith is not a named insured is not absolutely fatal to its claim to the status of an assured under the policy, for there are cases holding that the parties having that position are to be determined by construing the policy as a whole.[1] Nevertheless, in this case the circumstances pointing to M. A. Smith being an insured are rather weak. The definitional section in which the "Named Insured" is specified and said thereafter to be called "*the* Insured" would seem to exclude the possibility that other, unnamed parties should be accorded the status of assureds by implication. Essentially, exclusive reliance is placed on the "as their respective interests may appear" language of the dual interest floater. Not to read that section as conferring the status of assured

on lessees, M. A. Smith asserts, would write it out of the policy.

■ On the view I take of this case, I need not decide that question for I am of the opinion that the language M. A. Smith relies on actually does not apply to it. The dual interest floater here insures the interests of Southern Fleet "and any lessee, as their respective interests may appear." While this language seems rather straightforward, it takes on puzzling aspects when one attempts to harmonize it with other provisions of the policy, and in particular with the single interest floater. The difficulty that arises is what the difference is between these two floaters from the point of view of the party taking out the insurance, the lessor Southern Fleet. In contrast to the dual interest floater, the single interest floater covers "only the interests of the insured," yet each applies to "all property leased by the Insured except [the same specified exclusions]"[2] and each does so "continuously from the time title of property is acquired by the Insured *and leaves the Insured's premises until satisfaction of the lease agreement.*"[3] This last provision is most significant, since it is the type of time period that would be adopted were lessees intended to be covered under these floaters, since it makes the policy effective *only* for that period during which lessees would have a possessory estate in the acquired property. Yet each floater covers the interests of the lessor fully while only one covers the interests of lessees. The question arises why a lessor would bother to take out *both?*

The insurer Liberty Mutual's explanation of this is that the single interest floater is intended to cover straight leasing arrangements while the dual interest floater is to apply only to those lessees

---

1. See, e. g., Brugioni v. Maryland Casualty Co., 382 S.W.2d 707 (Mo.S.Ct.1964) ; Midwest Contractors Equipment v. Bituminous Casualty Corp., 112 Ill.App.2d 134, 251 N.E.2d 349 (1969) ; Varga v. Resolute Insurance Co., 166 A.2d 263 (D.C. Munic.Ct.App.1960). *Cf.* Shapiro v. Diguilio, 95 Ill.App.2d 184, 237 N.E.2d 771 (1968).

2. Paragraph III of each floater.

3. Paragraph IV of each floater.

who enter into lease-purchase agreements with Southern Fleet. Only ownership interests in the property insured are covered, Liberty maintains, and lessee-purchasers acquire an ownership interest in the property as they make their payments, while ordinary lessees do not. Thus the dual interest floater covers the lease-purchaser's interest pro rata with that retained by the lessor-owner, while an ordinary lessee having acquired no such interest is not an assured under the single interest floater. Were this construction to be followed, M. A. Smith would come under the single interest floater, as neither it nor the parties from whom it leased were operating the equipment under lease-purchase agreements with Southern Fleet. Hence M. A. Smith would not be covered at all under the policy and subrogation against it would clearly be appropriate.

■ The difficulty with this construction is that the policy itself does not make any distinction between lease-purchasers and straight lessees, but instead lumps the interests of all lessees together in the dual interest floater. Thus to follow the insurance company's reading I would be obliged to interpolate language into the policy in a fashion which would cut back on rather than expand the coverage evident upon a literal reading of just the dual interest floater. In addition to this objection, M. A. Smith points out that lease-purchase agreements are not recognized as such under the law of Louisiana. That is, ev-

ery such purported transfer of chattel is classified either as a lease or as a purchase, and ownership rights pass only to those "lease purchasers" who are assigned the status of purchasers.[4] Defendant also notes that insurance on property does not automatically pass with title thereto, but that instead there must be a separate agreement by the carrier to that effect.[5] From this M. A. Smith would have me infer that the very class of entities that Liberty Mutual claims are protected by the policy ("lessees" with options to purchase) are the only ones who could not possibly be assureds, since there is no separate, express agreement to cover them, as required by law.[6]

■ In spite of these objections, I believe that this is one of those rare instances where a restrictive reading of the policy in favor of the insurer is justified. The choice appears to be between a somewhat strained construction of a single word ("lessees") and the writing of one entire floater out of the policy as surplusage. While M. A. Smith is correct in its contention that insurance on property will not pass with the title thereto without a collateral agreement to that effect, the dual interest floater itself can quite readily be construed as serving that purpose. By its own terms it purports to cover the "interests" of just such third parties as, and to the extent that, those interests come into existence. Under those circumstances it would appear to be the

4. Harry B. Loeb Piano Co. v. Kessler, 140 So. 398 (La.App.1932) ; Dickens v. Singer Sewing Machine Co., 19 La.App. 735, 140 So. 296 (1932) ; Byrd v. Cooper, 166 La. 402, 117 So. 441, 442 (1928) ; Grapico Bottling Works v. Liquid Carbonic Co., 163 La. 1057, 113 So. 454 (1927).

5. Luke v. Theriot, 195 So.2d 685 (La. App.1967).

6. I note that this assertion, if valid, would seem to rule out any coverage of M. A. Smith under the policy as well. I do not see how the rule that coverage will not follow a transfer of ownership rights without an express agreement to that effect could permit a coverage of the possessory

interest acquired by ordinary lessees to be implied without similar formalities. The rationale behind the rule governing changes in ownership—namely that a new owner might expose the carrier to a very different level of risk than it had agreed to assume with the previous owner—would seem at least equally applicable to a lessor-lessee situation. If lessees could receive the status of assureds so easily the insurer could be exposed to liability out of all proportion to the premium benefits it receives. The thrust of M. A. Smith's argument is also at least moderately inconsistent with its general position that this policy should be liberally construed in favor of finding coverage.

lesser of two evils to follow the insurance company's interpretation.[7] I am, of course, obliged to give the policy a fair reading as a whole, and according to 44 C.J.S. Insurance § 308, p. 1226:

> The general rule that doubtful language contained in an insurance policy is to be construed in favor of insured and against insurer . . . operates only after insured has been determined and not in deciding whether a certain individual belongs to the insured class described in the policy, and a third person who is not a party to a contract of insurance usually is not entitled to a strict construction in his favor in determining whether the contract was made for his benefit.

On balance then, I think it most reasonable to hold that M. A. Smith is not an insured under this policy, as this would most closely effectuate the intent of the parties to the contract of insurance. Although the policy contains several indications of an intent to insure at least the interests of lessees,[8] such as M. A. Smith, the most rational harmonizing construction of the entire contract of insurance requires a contrary result.

It is therefore the judgment of the Court that M. A. Smith Well Service, Inc., is liable to Milchem, Inc., for the destruction of its hoist, and the further judgment of the Court that Liberty Mutual Insurance Company may recover against M. A. Smith Well Service, Inc.,

7. Counsel for M. A. Smith has failed to advance a plausible alternative explanation for this anomaly, nor have I been able to conceive of one.

8. If M. A. Smith as a "lessee" were found to be covered by the dual interest floater rather than the single interest floater, it would not thereby automatically become an insured under the policy. Rather two additional issues would arise: (1) Did M. A. Smith's possessory estate in the degasser amount to an insurable interest therein; and (2) assuming this to be so and viewing the policy as a whole, did insuring M. A. Smith's *interest* in the equipment make M. A. Smith an insured thereunder, even though it was not a named insured. In addition to the authorities

by way of subrogation the monies it paid to its insured, Southern Fleet Leasing Corp., for the damage to the latter's degasser.

cited in note 1, *supra*, the following cases bear directly on those rather perplexing questions. United States v. Seaboard Machinery Corp., 256 F.2d 166, 170 & n. 8 (5th Cir. 1958); Builders & Mfgrs. Mut. Cas. Co. v. Preferred Automobile Ins. Co., 118 F.2d 118 (6th Cir. 1941); Baltimore Contractors, Inc. v. Circle Floor Co. of Washington, Inc., 318 F.Supp. 106 (D. Md.1970); Greenbriar Shopping Center, Inc. v. Lorne Co., 310 F.Supp. 303 (N.D. Ga.1969), aff'd 424 F.2d 544 (5th Cir. 1970); Allemania Fire Ins. Co. v. Winding Gulf Collieries, Inc., 60 F.Supp. 65 (S.D.W.Va.1945); Louisiana Fire Ins. Co. v. Royal Indemnity Co., 38 So.2d 807 (La.App.1949); Howell v. Globe & Rutgers Fire Ins. Co., 133 Misc. 193, 231 N.Y.S. 67 (1928).