272 F.2d 231
 59-2 USTC P 9736
 CENTRAL SURETY AND INSURANCE CORPORATION
v.
MARTIN INFANTE CO., Inc. Board of Education of Township of
Millburn in County of Essex; and Conti Bros.
Roofing Co.; and New Jersey Hardware
Co., United States of America,
Appellant.
 No. 12851.
 United States Court of Appeals Third Circuit.
 Argued Sept. 22, 1959.
Decided Nov. 4, 1959.
 
 Myron C. Baum, Washington, D.C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, George F. Lynch, Attys., Dept. of Justice, Washington, D.C., Chester A. Weidenburner, U.S. Atty., Charles H. Hoens, Jr., Asst. U.S. Atty., Newark, N.J., on the brief), for appellant.
 Ward J. Herbert, Newark, N.J., (McCarter & Engligh, Alfred J. Kovell, Newark, N.J., on the brief), for appellee.
 Before GOODRICH, STALEY and HASTIE, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 The instant action is for a determination of the relative rights of the United States and a surety to a fund interpleaded in the District Court for the District of New Jersey by the Board of Education of the Township of Millburn, New Jersey. The action was originally instituted by the Central Surety and Insurance Corporation (Surety) in the Chancery Division of the Superior Court of New Jersey. Subsequently the United States was made a defendant as a tax claimant and removed the case to the district court pursuant to 28 U.S.C. 1444.
 
 
 2
 On August 17, 1954, Martin Infante Co., Inc., (Infante) entered into a contract with the Board of Education of the Township of Millburn (Board) for the construction of a senior public high school for $1,367,460. Contemporaneously with the execution of the construction contract, the appellee became surety upon a performance and payment bond, required by N.J.S.A. 2A:44-143, which incorporated by reference the contract.
 
 
 3
 Infante commenced performance of the contract and received partial payments pursuant to the terms of the contract; however, it was unable to complete its undertaking. When Infante admitted default on February 23, 1956, more than a month after the scheduled completion date, there was not only a substantial amount of work to be completed but numerous unpaid job obligations and lien claims of materialmen and subcontractors had accured. Surety thereupon paid the claims, taking assignments of their respective liens, and completed the contract, utilizing the facilities of Infante.[1] The district court found that after the default Surety expended in fulfillment of the contract $548,061.69, only $402,217.33 of which was received from the Board. Thus, the out-of-pocket loss to Surety was $145,844.36 unless it is permitted to reach the $99,117.19 remaining in the registry of the court.[2]
 
 
 4
 The lien of the United States is alleged to have arisen on February 15, 1956, when the District Director of Internal Revenue assessed and made demand of Infante for payment of taxes due. A notice of levy was subsequently served upon the Board in an attempt to attach any moneys in its hands due to Infante.
 
 
 5
 The Federal tax liens here involved arose under Sections 6321 and 6322 of the Internal Code of 1954, 26 U.S.C.A. 6321, 6322. In pertinent part, Section 6321 provides that 'If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.' Although there has been extensive discussion, both in the briefs and at oral argument, concerning the priority of liens, it is clear beyond doubt that we must first consider whether or not Infante had any property or rights to property upon which a lien for Federal taxes could attach. As Justice Brennan indicated in determining whether a deceased had property rights in a life insurance policy to which a lien could attach:
 
 
 6
 'We must now decide whether Mr. Bess possessed in his lifetime, within the meaning of 3670 (now 26 U.S.C. 6321), any 'property' or 'rights to property' in the insurance policies to which the perfected lien * * * might attach. Since 3670 creates no property rights but merely attaches consequences, federally defined, to rights created under state law, Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 2 Cir., 241 F.2d 142, 144, we must look first to Mr. Bess' right in the policies as defined by state law.' United States v. Bess, 1958, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135.
 
 
 7
 The district court made no separate findings but rather incorporated them in its opinion. It concluded upon ample evidence, aside from Infante's admission, that there had been a default upon the contract. Our independent examination of the record compels the same conclusion.
 
 
 8
 By the terms and conditions of its contract with the Board, Infante became entitled to receive payments thereunder only if (a) the work had been completed to the satisfaction of the architect, (b) there were no outstanding claims against Infante filed with the Board, and (c) satisfactory evidence had been submitted to the Board that all obligations incurred by Infante and its subcontractors in carrying out the project had been satisfied. As of the date the Federal lien is alleged to have arisen, Infante was not entitled to receive any money from the Board under the terms of the contract, for Infante owed subcontractors and materialmen for services and materials furnished on the job amounts in excess of the sum retained by the Board; $118,316.91 had been withheld, and the outstanding obligations of Infante amounted to $211,000.
 
 
 9
 We must now determine under New Jersey law how Infante's interest in the contract was affected by this default. The common law of New Jersey is quite clear on this point. This court had occasion to consider it in Karno-Smith Co. v. Maloney, 3 Cir., 1940, 112 F.2d 690, at page 692. Citing Nutz v. Murray-Nutz, Inc., 1931, 109 N.J.Eq. 95, 156 A. 668, Judge Maris stated that
 
 
 10
 '* * * an insolvent subcontractor cannot recover an amount ostensibly due him from the contractor when the latter is in fact obligated under his statutory bond for more than that amount to one of the materialmen of the subcontractor. * * * The right of set-off thus recognized by New Jersey law was available to the plaintiff (contractor) in this case and by reason of its existence the Supply Company (subcontractor) had no enforceable right to property in the plaintiff's hands which was subject to attachment or distraint at the instance of the Supply Company's creditor, the collector (of internal revenue).'
 
 
 11
 In like vein in Damato v. Leone Construction Co., App.Div.1956, 41 N.J.Super. 366, 125 A.2d 302, it was held that where a construction company had not substantially performed it had no property rights in the balance of the contract price to which the United States tax liens against it could attach. Citing R. Krevolin & Co. v. Brown, App.Div.1952, 20 N.J.Super. 85, 89 A.2d 255, the court stated that in New Jersey partial performance of an entire and indivisible contract by one of the parties does not generally entitle it to performance of the contract by the other party nor warrant a partial recovery of the consideration unless the performance was substantial.[3]
 
 
 12
 In the present case, where on a $1,367,460 contract $548,061.69 was expended to complete the contract following default, it is abundantly clear that there had not been a substantial performance of the contract. Infante, therefore, had no property or right to property in the fund in question.[4] Since the government's rights under Sections 6321 and 6322 can rise no higher than the rights of the taxpayer, there was nothing of Infante's to be levied upon.
 
 
 13
 The judgment will be affirmed.
 
 
 
 [1]
 The district court found that Surety completed the contract with the facilities of Infante. One of the contentions of the government is that Infante completed the contract, merely obtaining financial aid from Surety. However, the record clearly supports the district court's finding. In effect, Infante in performing this work was a mere agent of Surety. Surety, following Infante's default, was at liberty to choose whomsoever it pleased to complete the contract
 
 
 [2]
 Pursuant to N.J.S.A. 2A:44-141 and the district court's order dated August 27, 1957, the Board paid into the registry of the district court on October 28, 1957, the sum of $185,572.58, constituting the balance owed by the Board under the contract. Subsequently, pursuant to a consent order of the court, dated November 7, 1957, Surety was paid $86,455.39 out of the fund
 
 
 [3]
 It should be noted that this principle is recognized generally, for in 3 Williston, Contracts (rev. ed.) 805, p. 2262, it is stated:
 'Where the rule of substantial performance prevails it is essential that the plaintiff's default should not have been willful; and the defects must not be so serious as to deprive the property of its value for the intended use nor so pervade the whole work that a deduction in damages will not be fair compensation.'
 
 
 [4]
 Even where there has not been a substantial default, the New Jersey statutes give public agencies the right to pay directly any unpaid materialmen, mechanics, or laborers without an order of court. Having done so, the agency is entitled to credit upon the contract for the amount so paid and is not obliged to pay the same to the contractor. N.J.S.A. 2A:44-136