**William Kenneth KATSARIS, Sheriff of Leon County**

v.

**The UNITED STATES of America, Leon County, a political subdivision of the State of Florida, Jose Luis Acosta, and Luis Fulgencio Bosch.**

**No. 79–0946.**

United States District Court,
N. D. Florida,
Tallahassee Division.

Sept. 15, 1980.

Ronald A. Labasky, Tallahassee, Fla., for plaintiff.

Rodger M. Moore, Tax Division, Dept. of Justice, Washington, D. C., for United States.

F. E. Steinmeyer, III, Tallahassee, Fla., for Leon County.

MEMORANDUM OPINION AND
FINAL ORDER

HIGBY, District Judge.

Money, money, who gets the money is the name of the interpleader [1] game. Here it's the locals, Leon County, versus the Feds,

---

1. Fed.R.Civ.P. 22; 28 U.S.C. § 2361

the Internal Revenue Service.[2] Both claim a right to $224,609.10 presently in the possession of Plaintiff, Leon County Sheriff Kenneth Katsaris. Leon County claims entitlement to the money under Section 925.-06, Florida Statutes (Supp.1978), which provides for the sale or destruction of unclaimed personal property in criminal proceedings. The Service claims the money by virtue of a tax lien against Acosta entered July 31, 1978.[3] It argues the money was Acosta's and is therefore subject to the lien against Acosta. Leon County claims the money is abandoned property. Katsaris asks for his costs in this proceeding if Leon County prevails.

Katsaris obtained the money July 22, 1978, when Acosta and Bosch were arrested during an aborted drug deal involving 7,000 pounds of marijuana. They were arrested in their motel room in the Dutch Kitchen Motel in Tallahassee, Florida. Investigators from the Leon County Sheriff's Office seized two automatic pistols, ammunition, $100,021.10 in the proverbial brown paper bag, $4,435.00 from Acosta's wallet, $143.00 from Bosch's wallet, and $120,010.00 innovatively stashed in a plastic bag. All these items were in the motel room at the time of arrest but not when Acosta and Bosch checked in.

When they were arrested Acosta and Bosch denied all knowledge and ownership of everything found in the room except the money in their wallets. In an affidavit signed on September 29, 1978, Acosta swore the $220,031.10 found in the brown bag and the plastic bag was not his. It was entrusted to him, he said, by investors who wanted him to purchase land for them in North Florida. Acosta's statement acknowledged his ownership of the $4,435.00 found in his wallet. It also stated Bosch owned the $143.00 found in his wallet. Since their arrest neither individual has made any effort to obtain the money.

A federal tax lien is almighty and attached on July 31, 1978, to Acosta's ownership interest in anything in the universe including this money. *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). For determining the United States' interest in the money the determinative fact is the extent of Acosta's ownership of the money. *See, United States v. Mayor and City Council of Baltimore*, 564 F.2d 1066 (4th Cir. 1977); *United States v. Burgo*, 175 F.2d 196 (3d Cir. 1949); *Central Surety & Insurance Corp. v. Martin Infante Co.*, 272 F.2d 231 (3d Cir. 1959). Florida's law determines Acosta's interest in the money. *Aquilino v. United States*, 363 U.S. 509, 4 L.Ed.2d 1365 (1960). The money in Acosta's wallet and the bags was plainly Acosta's when he was arrested. His story of land investors is incredible. Circumstances, including several trips to the farm where the marijuana was found, show Acosta was a drug dealer and the money was his for use in the ill–fated dope deal.

 Leon County argues Acosta had abandoned all ownership in the money before the tax lien attached. Abandonment is a question of ultimate fact. *U. S. v. Alden*, 576 F.2d 772 (8th Cir. 1978), *cert. den.*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978). It "is the relinquishment of a right or of property with the intention of not reclaiming it or reassuming its ownership or enjoyment." *Ellis v. Brown*, 177 F.2d 677, 679 (6th Cir. 1949). *See, also*, 1 Fla.Jur.2d, Abandoned Prop., § 1 (1977); 1 Am.Jur.2d, Abandoned, Lost, Etc., Prop., §§ 1, 5, 12 (1962); Black's Law Dictionary (5th Ed. 1979) at 2. *Cf., The No. 105*, 97 F.2d 425 (5th Cir. 1938), (discussing the analogous but not identical maritime law concept dereliction). Both intent to abandon and an external act effecting the intent must be proven. *See, Linscomb v. Goodyear Tire and Rubber Co.*, 199 F.2d 431 (8th Cir.

2. There are two other Defendants. One, Jose Luis Acosta, has not responded. The other, Luis Fulgencio Bosch, was never served; apparently the parties are willing to risk a judgment subject to collateral attack.

3. The lien arose after Acosta did not pay a jeopardy assessment made pursuant to 26, United States Code, Section 6861. *See*, 26 U.S.C. § 6321. On August 1, 1978, the Service levied under 26 U.S.C. § 6331 on the funds held by Sheriff Katsaris.

1952); 1 Fla.Jur.2d, Abandoned Property, § 2 (1977); 1 Am.Jur.2d, Abandoned, Lost, Etc., Prop., §§ 15, 16, 17 (1962).

The facts here show Acosta abandoned all interest in the $220,031.10 in the bags immediately after his arrest. He stated his intention. And his failure to take any step to recover the money demonstrates his sincerity. Although people do not ordinarily abandon money, Acosta had good reason. Admitted ownership of the money would have been persuasive evidence against him in the drug prosecution. Quite understandably he chose to abandon the money rather than strenthen the case against him. When he was arrested he abandoned the money preferring to concentrate on maintaining his freedom.

■ The $4,435.00 in his wallet Acosta did not abandon. He never denied ownership of it. Thus the evidence of his intent to relinquish all interest was not as strongly shown as of the date of the tax lien. The lien attached to the $4,435.00 on July 31, 1978. It did not attach to the $220,031.10 because on July 31, 1978, the money was not Acosta's; he had abandoned it.

These findings resolve the Service's claim in these proceedings. Leon County's claim to the $220,031.10 and Bosch's $143.00 remain for disposal. Katsaris has requested award of costs. That too remains for disposition. But Katsaris has stipulated he cannot recover costs from the money taken by the IRS. His cost recovery will occur only if Leon County prevails.

Leon County's claim relies upon Section 925.06, Florida Statutes (Supp.1978). That statute is ambiguous and has not been definitively interpreted by a Florida court. Its application to the funds here may be questioned because it refers to "property in the custody of the court." Katsaris was ordered by the circuit court to hold the funds. They may or may not qualify as in the custody of the court. If they are in the custody of the court, the proper procedure for disposition remains debatable. Public notice, not given in this case, is required before abandoned property is sold. Notice is not specifically required if the law en-

forcement department involved uses the property. Given the peculiar nature of this property, which procedure should be followed is unclear. These are all matters of state law better handled by state courts. *See, Aquilino v. United States, supra.* Jurisdiction over this case was founded solely upon the United States' claim. This order disposes of its claim. There is no reason to continue exercising jurisdiction. Resolution of the remaining issues is better left in the able hands of the Leon County judiciary, from whence this case emanated.

Therefore, it is ORDERED AND ADJUDGED that:

1. Plaintiff shall pay over to the United States $4,435.00 and any interest earned on that money which was taken from Acosta's wallet.

2. This cause is remanded to the Circuit Court of the Second Judicial Circuit, in and for Leon County.