**William Kenneth KATSARIS, Sheriff of Leon County, Florida, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant,**

and

**Leon County, Defendant-Appellee.**

No. 80–6015.

United States Court of Appeals, Eleventh Circuit.

Sept. 1, 1982.

Carleton D. Powell, Thomas M. Preston, Jr., Attys., John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Ronald A. Labasky, Tallahassee, Fla., for Katsarsis.

F. E. Steinmeyer, III, Folsom & Steinmeyer, Tallahassee, Fla., for Leon County.

Before GODBOLD, Chief Judge, RONEY and WOOD,* Circuit Judges.

PER CURIAM:

This is an appeal from an order of the district court dismissing the Internal Revenue Service's claim to $220,031.10 against a fund interpleaded by the Sheriff of Leon County, Florida.[1] The sole issue is whether the judgment of the District Court was clearly erroneous in determining that there had been an abandonment of the money in question by the defendant Acosta. We reverse.

I.

Jose Luis Acosta and Luis Fulgencio Bosch were arrested in a motel in Tallahassee, Florida, on July 22, 1978, and were charged with possession of firearms and conspiracy to distribute marijuana. A search of the motel room produced two automatic pistols and ammunition, $100,021.10 in a brown paper bag, $120,010 in a plastic bag, $4,435 from Acosta's wallet, and $143 from Bosch's wallet.

At the time of their arrests, it has been stipulated that both Bosch and Acosta "denied any ownership or knowledge of the money other than that found in their wallets." Subsequently, however, Acosta stated in a sworn statement given on September 29, 1978 that he had been entrusted with the possession of the $220,031.10 for the purpose of making a real estate investment for some unnamed investors from the South Florida area. The money was seized by the Sheriff of Leon County, Florida and has remained in his possession.

On July 31, 1978, the Internal Revenue Service, pursuant to 26 U.S.C. § 6851,[2] made an assessment against Acosta for federal income taxes in the amount of $486,314.63 and gave notice and demand for payment thereof on that day. The Internal

---

* Honorable Harlington Wood, Jr., U. S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. The United States was awarded the sum of $4,435 with interest from the interpleaded fund. That partial award is not an issue in this appeal.

2. § 6851. Termination assessments of income tax
   (a) Authority for making.—
     (1) In general. If the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act . . . tending to prejudice or to render wholly or partially ineffectual proceedings · to collect the income tax for the current or the immediately proceeding taxable year unless such proceeding be brought without delay, the Secretary shall immediately make a determination of tax for the current taxable year or for the preceding taxable year, or both, as the case may be, and notwithstanding any other provision of law, such tax shall become immediately due and payable.

Revenue Service also filed a notice of federal tax lien with the Clerk of the Circuit Court, Dade County, Florida, with respect to the outstanding unpaid balance. Additionally, the Internal Revenue Service served a notice of levy on the Sheriff of Leon County with respect to all property and rights to property in his possession which belonged to Acosta.[3]

On June 21, 1979, both Acosta and Bosch pleaded guilty to state charges of unlawful possession of firearms, the other charges being *nolle prosequi*. They were sentenced to probation and assessed a fine of $60,000 each, which they paid in cash. The Circuit Court ordered the Sheriff of Leon County to maintain custody of the funds seized at the time of the arrests, until possession and ownership of the money were finally determined.

On June 27, 1979, the Sheriff of Leon County, William Katsaris, filed this interpleader action in the Circuit Court of Leon County. Sheriff Katsaris named as defendants, the United States of America, Acosta, Bosch, and Leon County, averring therein that each of these parties was able to claim an interest in the seized money in his possession, and further, that he was merely a stakeholder in the fund with no personal interest whatsoever. On August 3, 1979, the United States filed a petition to remove the case to the District Court for the Northern District of Florida pursuant to 28 U.S.C. §§ 1442(1), 1444 and 2410.[4]

Neither Acosta nor Bosch filed any pleadings with respect to this interpleader action. The United States filed an answer alleging that the funds in question were reduced to its constructive possession on July 31, 1978, when the notice of levy was served on Sheriff Katsaris. Leon County answered claiming that the funds in question were unclaimed personal property which belonged to the County pursuant to Section 925.06, Florida Statutes Annotated (Supp.1978).[5]

After a hearing Judge Higby concluded that the "money in Acosta's wallet and the bags was plainly Acosta's when he was ar-

---

3. § 6321. Lien for taxes

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

4. § 1442. Federal officers sued or prosecuted

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

§ 1444. Foreclosure action against United States

Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending.

§ 2410. Actions affecting property on which United States has lien

(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

(5) of interpleader or in the nature of interpleader with respect to,

real or personal property on which the United States has or claims a mortgage or other lien.

5. The Statute at the time the IRS filed notice of federal tax lien provided:

§ 925.06, Florida Statutes Annotated, Appendix

(1) Unclaimed personal property in custody of the court from a criminal proceeding . . . shall be sold at public sale by the sheriff . . . . The proceeds shall be paid to any person making proper claims, or if unclaimed for sixty days, shall be paid to the county general fund . . . .

(§ 925.06 was amended by § 3, 1978 Fla. Laws, Ch. 78–105, effective October 1, 1978. See Fla.Stats.Anno.Cum.Ann., Pocket Part (1981) at 140.)

rested." The Court awarded the IRS the $4,435 found in Acosta's wallet, but concluded that the balance, $220,031.10, had been abandoned by Acosta and therefore was not subject to the IRS's lien. Thus resolving the United States' interest in the stake, the District Court remanded to State court for additional proceedings as to the ownership of the $220,031.10.[6] The United States appealed.

## II.

■ We have jurisdiction pursuant to 28 U.S.C. § 1291 to review the final judgment of the District Court dismissing the government's claim to the $220,031.10 remainder of the interpleaded fund, even though the order resulted in a remand to state court for resolution of the remaining issues. While by statute "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal," 28 U.S.C. § 1447(d), the Supreme Court's decision in *Waco v. United States Fidelity & Guaranty Co.*, 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934), is controlling. *See also Southeast Mortgage Co. v. Mullins*, 514 F.2d 747 (5th Cir. 1975). The District Court explicitly announced the effect of its ruling by stating, "Jurisdiction over this case was founded solely upon the United States' claim. This order disposes of its claim. There is no reason to continue exercising jurisdiction." Under the reasoning in *Waco*, the order dismissing the government's claim is the proper subject of an appeal because if not reversed or set aside it will remain conclusive upon the petitioner.

## III.

The District Court dismissed the government's claim by determining that Acosta abandoned all interest in the money found in the bags in the motel room at the time of his arrest and before the government lien could attach. Therefore, Acosta had no interest in the property to which the government could attach its tax lien.[7]

■ Fourth Amendment Constitutional law notions of abandonment do not apply. Abandonment in the strict property right sense is to be distinguished from abandonment in search and seizure cases where the issue is merely whether the individual has relinquished his interest in property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *United States v. Williams*, 569 F.2d 823 (5th Cir. 1978); *United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973). "Mr. Justice Frankfurter in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), admonishes that it is unnecessary and ill-advised to import into the law of constitutional search and seizure the subtle distinctions of private property law." *United States v. Edwards*, 441 F.2d 749, 753 (5th Cir. 1971). As this is not a search and seizure case it must be decided in accordance with the private property law of Florida. But a search of Florida law discloses little to guide us in the circumstances of this case.[8]

■ Guidance concerning the law of abandonment of personal property is equally limited in other jurisdictions. While the cases are few and old, "abandonment" as applied to property and property rights has long had a generally accepted and a well

---

**6.** The District Court opinion is reported at 499 F.Supp. 282 (N.D.Fla.1980).

**7.** *The threshold question in a case where the Federal Government asserts a tax lien, is "whether and to what extent the taxpayer had 'property' or 'right to property' to which the tax lien could attach." Aquilino v. United States, 363 U.S. 509, 512, 80 S.Ct. 1277, 1279, 4 L.Ed.2d 1365 (1960). In the present case, the district court's findings established that at the time he was arrested Acosta owned the money found in the motel room. In determining*

whether the money was the property of Acosta on the day the tax lien was filed, we look to state law, not federal law.

**8.** The only Florida case to be found that explicitly deals with the issue of abandonment of personal property is *The No. 105, Belcher Oil Co. v. Griffin*, 97 F.2d 425 (5th Cir. 1938). Although this was a case arising in admiralty, the issue being whether property (a barge) had been abandoned by the owner, it would necessarily have been decided by applying state law.

defined and technical meaning. *St. Peter's Church v. Bragaw,* 144 N.C. 126, 56 S.E. 688 (1907). What constitutes an "abandonment" as relates to property has been defined by the Fifth Circuit and other courts. "There must be a voluntary intention to abandon, or evidence from which such intention may be presumed." *The No. 105, Belcher Oil Co. v. Griffin,* 97 F.2d 425, 426 (5th Cir. 1938); *Mason v. Hasso,* 90 Ariz. 126, 367 P.2d 1 (1961); *Commonwealth v. Koontz,* 258 Pa. 64, 101 A. 863 (1917). Abandonment is always voluntary and involves a positive intention to part with ownership. *McIver v. Norman,* 187 Or. 516, 527, 213 P.2d 144 (1949). It is essential that the owner act without coercion or pressure. *Manello v. Bornstine,* 44 Wash.2d 769, 270 P.2d 1059 (1954); *Huffman v. Smyth,* 47 Or. 573, 84 P. 80 (1906). The doctrine of abandonment has no application unless there is a total desertion by the owner without being pressed by any necessity, duty, or utility to himself, but simply because he no longer desires to possess the thing and willingly abandons it to whoever wishes to possess it. *State Mutual Life Assurance Co. of Worcester, Mass. v. Heine,* 141 F.2d 741 (6th Cir. 1944); *Helvering v. Jones,* 120 F.2d 828 (8th Cir. 1941); *Dickens v. Singer Sewing Machine Co., Inc.,* 19 La.App. 735, 140 So. 296 (1932); *Sandy River Coal Company v. Champion Bridge Company,* 243 Ky. 424, 48 S.W.2d 1062 (1932). "[T]here can be no abandonment absent a composite fact, one element visible, the other sounding in intention, motive." *Linscomb v. Goodyear Tire & Rubber Co.,* 199 F.2d 431, 436 (8th Cir. 1952). It is, however, the question of intent that weighs most heavily. *See J. C. Vereen & Sons, Inc. v. City of Miami,* 397 So.2d 979 (Fla.App.1981); *Dade County v. City of North Miami Beach,* 69 So.2d 780 (Fla.1953). *See also Irion v. Hyde,* 107 Mont. 84, 81 P.2d 353 (1938); *Moore v. Sherman,* 52 Mont. 542, 159 P. 966 (1916). Intent is a question of fact. *United States v. Minker,* 312 F.2d 632 (3d Cir. 1962), *cert. denied,* 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). More particularly, intent is a question of ultimate fact and proof of intention is of necessity, largely circumstantial. Inferences must be drawn from all the facts and circumstances surrounding the transaction. *United States v. Alden,* 576 F.2d 772 (8th Cir. 1978), *cert. denied,* 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978).

We are well aware that a trial court's determinations of issues of fact are generally entitled to a presumption of correctness, not subject to reversal unless shown to be clearly erroneous. Fed.R.Civ.P. 52(a); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Blasser Brothers, Inc. v. Northern Pan American Line,* 628 F.2d 376 (5th Cir. 1980); *United States v. State of Florida,* 482 F.2d 205 (5th Cir. 1973). However, as Judge Wisdom stated in *Mayo v. Pioneer Bank & Trust Co.,* 297 F.2d 392, 395 (5th Cir. 1961), "When the factual determination is primarily a matter of drawing inferences from undisputed facts or determining their legal implications, appellate review is far broader than where disputed evidence and questions of credibility are involved."

Here the facts are undisputed; no questions of witness credibility are presented. What is at issue are the inferences to be drawn from the facts. The District Court reasoned that admitting ownership of the money would have been persuasive evidence against Acosta on the charge of conspiring to distribute marijuana, and that he chose to abandon the money rather than strengthen the case against himself. It is in this reasoning that we find the District Court erred in finding that Acosta had "abandoned" the money. The facts and circumstances clearly establish that Acosta's sole purpose in disclaiming the money was to separate himself from incriminating evidence in a prosecution for a criminal offense. That conduct does not meet the test that the abandonment of the property be voluntary, without coercion or pressure, or without the owner being pressed by any necessity or utility to himself.

Judge Goldberg warned, specifically concurring in *United States v. Williams, supra* at 827, that the concept of abandonment is not to be employed with abandon. No one

in the present case testified as to the circumstances, or what was actually said or done by Acosta or Bosch at the time of the motel room arrest or later at the police station. We have only the brief stipulation on this issue between the United States and Leon County that Acosta and Bosch "denied any ownership or knowledge of the moneys other than the moneys in their own wallets." That stipulation appears to be based on the report of the arresting officers that while being interrogated at the Leon County Jail following the arrest both Acosta and Bosch denied any knowledge of the money. That disclaimer came while in custody and in jail during interrogation and not immediately at the time of arrest.

Later, in his affidavit, Acosta plainly stated that Bosch "did not have any ownership, right, title or interest" in the money. Acosta, however, does not make such denials about his own interest, but claims instead that he had been entrusted with the money for real estate investment purposes by unnamed persons. There is no reason to believe that explanation and no one did. Nor does there appear to be any reason to believe the original Acosta statement that he had no knowledge of the money. The truth of either statement is not the issue, however, although the interest claimed in the affidavit would support the government's claim of a lien on whatever possessory interest Acosta may have had. If others do in fact have a claim to the money, their remedy is to contest the wrongful levy pursuant to section 7426 of the Internal Revenue Code.

In these cloudy circumstances, it is difficult to find abandonment in the traditional sense of casting aside one's property forever, freely, voluntarily without coercion. The attempted abandonment in these circumstances is not sufficient to avoid the government's lien.

### IV.

The Sheriff of Leon County, as stakeholder, has requested attorney's fees and costs for his participation in this cause. He has correctly noted that Florida courts have found proper the award of reasonable attorney's fees and costs in an interpleader action where the party bringing the action is disinterested in the stake held and has not acted to cause the conflicting claims. *Drummond Title Company v. Weinroth*, 77 So.2d 606 (Fla.1955); *Ellison v. Riddle*, 166 So.2d 840 (Fla.App.1964).

Similar principles are applicable in Federal interpleader actions. And although the award of the stakeholder's costs and attorney's fees is discretionary with the court, such an award is common where the stakeholder has acted in good faith. *Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188 (9th Cir. 1962).

We have no doubt that Sheriff Katsaris has at all times acted in good faith and maintained a disinterested stance in this interpleader action. What is also indisputable, however, is once the government is successful in establishing a federal tax lien upon the funds in question, the judicial prerogative to award fees must give way to the supremacy of the federal tax lien law whenever a fee award would encroach upon the fund subject to the tax lien. *Spinks v. Jones*, 499 F.2d 339 (5th Cir. 1974). The tax lien in the present case is for $486,314.63. The remaining funds that have been found to be Acosta's amount to only $220,031.10. There are no funds which are not impressed with a federal tax lien which might be used to satisfy an award of attorney's fees and costs for the stakeholder.

IT IS ORDERED THAT

(1) the order of the District Court dismissing the federal government's claim be REVERSED,

(2) the order of the District Court remanding to the Circuit Court of the Second Judicial Circuit, in and for Leon County, be VACATED, and

(3) this cause be REMANDED to the District Court for further proceedings in accordance with this opinion.