**PRO–STEEL BUILDINGS, INC., Plaintiff,**

v.

**UNITED STATES of America; B.M.C. Contractors, Inc.; and Big Metal Construction, Inc., Defendants.**

Case No. 4:09cv512–RH/WCS.

United States District Court, N.D. Florida, Tallahassee Division.

May 16, 2011.

Davisson F. Dunlap, Jr., Davisson Dunlap, III, Dunlap & Shipman PA, Tallahassee, FL, for Plaintiff.

Bruce T. Russell, Washington, DC, John Hall Kirbo, Kirbo and Kirbo. PC, Albany, GA, for Defendants.

### ORDER AWARDING ATTORNEY'S FEES AND COSTS

ROBERT L. HINKLE, District Judge.

This interpleader action is before the court on the plaintiff stakeholder's claim for attorney's fees and costs. This order approves the claim and directs the clerk to disburse funds accordingly.

I

The plaintiff Pro–Steel Buildings, Inc. ("Pro–Steel") owed $60,304.37 for construction work. Three parties—the government, B.M.C. Contractors, Inc. ("BMC"), and Big Metal Construction, Inc. ("Big Metal")—claimed all or part of the funds. With court approval, Pro–Steel deposited the full amount of the debt into the court's registry. *See* ECF No. 34 at 5 of 11.

The government's claim to the funds was based on a tax levy against BMC. The

government moved for partial summary judgment on the ground that, as between BMC and Big Metal, it was undisputed that at least $34,710.05 was owed to BMC, and that, based on the levy, the government was entitled to at least that amount. BMC and Big Metal did not dispute the government's analysis and agreed that partial summary judgment should be entered. *See* ECF No. 36. By order docketed February 23, 2011, the partial-summary-judgment motion was granted and the clerk was directed to disburse $34,710.05 to the government.

The government, BMC, and Big Metal then entered a settlement agreement allocating $9,000 of the remaining funds to Big Metal—subject only to Pro–Steel's claim for costs and attorney's fees—and allocating the balance to the government. Pro–Steel objected on the ground that it was entitled to recover its costs and fees exceeded $9,000 and that it was entitled to recover the costs and fees from the entire fund—not just from the $9,000 allocated to Big Metal.

■ Under the controlling law of the circuit, Pro–Steel was entitled to recover its fees and costs only from funds not subject to the government's tax lien. *See Katsaris v. United States,* 684 F.2d 758, 763 (11th Cir.1982). Pro–Steel did not challenge—and without forfeiting its status as a neutral and disinterested stakeholder could not have challenged—the other parties' allocation of the remaining funds. On March 8, 2011, an order was entered (i) directing the clerk to disburse all but $9,000 in accordance with the settlement agreement, (ii) determining that Pro–Steel was entitled to recover its fees and costs from the remaining $9,000, and (iii) establishing procedures to determine the amount of recoverable fees and costs. *See* ECF No. 42 at 3 of 3. The $9,000 now has accrued interest of less than one dollar,

but for convenience this order sometimes ignores the interest.

Pro–Steel now seeks the entire $9,000. *See* ECF No. 44. BMC and Big Metal filed objections, though only Big Metal has standing to object. *See* ECF No. 45.

## II

Pro–Steel accurately notes that the objections were untimely. The March 8 order set Pro–Steel's deadline for filing fee and cost materials as April 5, 2011. ECF No. 42 at 3 of 3. The order provided that Local Rule 54.1(E) would govern fee procedures from that point forward. Under that rule, Big Metal was required to file any objections to Pro–Steel's fee claim within 14 days after service of Pro–Steel's materials. Pro–Steel served and filed its materials on March 18. With three days added based on electronic service, the deadline for objections was April 4. The deadline for objecting to the cost claim was 10 days after service, so March 31. *See* N.D. Fla. Loc. R. 54.2(B). Big Metal filed its objections on April 14, well beyond the deadline. *See* ECF No. 46.

This would be a sufficient basis for overruling the objections. But the delay caused no apparent prejudice. And the objections are unfounded anyway. This order addresses the claim for fees and costs on the merits.

## III

Pro–Steel claims $11,863.61 in attorney's fees and $599.61 in taxable costs. Big Metal challenges the claim on four grounds. First, Big Metal says that filing an interpleader action was unnecessary because the Internal Revenue Code provides absolute immunity to a person who surrenders funds in response to a tax levy. Second, Big Metal says Pro–Steel should be allowed to recover from the $9,000 remain-

ing fund only a pro rata share of its fees, in effect allocating the other fees to the share of the fund recovered by the government. Third, Big Metal says Pro–Steel improperly filed the action in state court, causing increased fees when the government removed the action to federal court. And fourth, Big Metal says Pro–Steel unreasonably incurred fees obtaining a default that was later set aside. This order rejects each of the assertions.

## A

■ Under both Florida and federal law, an interpleader plaintiff may recover its reasonable attorney's fees and costs, so long as the plaintiff did not cause the conflicting claims, was disinterested, and acted in good faith. *See, e.g., Katsaris v. United States,* 684 F.2d 758, 763 (11th Cir.1982); *Perkins State Bank v. Connolly,* 632 F.2d 1306, 1311 (5th Cir.1980). The issue is essentially equitable: a stakeholder who merely wishes to avoid liability for an erroneous choice between conflicting claims ordinarily should be made whole. *See, e.g., Sun Life Assurance Co. of Can. v. Sampson,* 556 F.3d 6, 8 (1st Cir.2009) (quoting 7 Wright, Miller & Kane, Federal Practice & Procedure § 1719, at 675 (3d ed. 2001)); *In re Mandalay Shores Coop. Hous. Ass'n,* 21 F.3d 380, 383 (11th Cir.1994).

■ Big Metal argues that because the Internal Revenue Code would have protected Pro–Steel from any liability for turning over the funds to the government, the interpleader action was unnecessary. A person ordinarily must turn over funds in response to a federal tax levy and risks both personal liability and a 50% penalty for failing to do so. *See* 26 U.S.C. § 6332(a), (d). The Code protects a person who complies:

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

*Id.* § 6332(e). This provision might indeed have protected Pro–Steel even without the filing of the interpleader action.

But the statutory protection for a person who turns over funds is not absolute. Thus, for example, a bank that receives a levy on the account of John Doe is not protected if it turns over funds from the account of Jane Doe or if it turns over funds of multiple customers all named John Doe. *See* 26 C.F.R. § 301.6332–1(c)(4) exs. 3–4; *see also Johnson v. United States,* 566 F.Supp. 1012 (M.D.Fla.1983) ("[I]mmunity ... is not extended to a person who mistakenly surrenders the property of a third party who is not a subject to an IRS levy."). The test is good faith:

> Any person who surrenders to the Internal Revenue Service property or rights to property not properly subject to levy in which the delinquent taxpayer has no apparent interest is not relieved of liability to a third party who has an interest in the property. However, if the delinquent taxpayer has an apparent interest in property or rights to property, a person who makes a good faith determination that such property or rights to property in his or her possession has been levied upon by the Internal Revenue Service and who surrenders the property to the United States in response to the levy is relieved of liability to a third party who has an interest in the property or rights to property, even

if it is subsequently determined that the property was not properly subject to levy.

26 C.F.R. § 301.6332–1(c)(2).

Had Pro–Steel simply turned over all the funds to the government, a court might well have held Pro–Steel immune from any claim by Big Metal or BMC. *See Gawryl v. Swan,* No. 97–381–JD, 1997 WL 834824 (D.N.H. Oct. 22, 1997) (denying stakeholder's motion for costs *against the IRS* because interpleader was unnecessary); *see also United States v. Bank of Am.,* No. 06CV711A, 2009 WL 2009022, at *5 (W.D.N.Y. Feb. 20, 2009) (collecting authorities). But Big Metal and BMC have similar names and an uncertain relationship; they are perhaps not wholly unlike two individuals named John and Jane Doe, or two individuals both known as John Doe.

In any event, Big Metal asserted a right to the funds and resisted their turn over to the government. Big Metal's argument now that Pro–Steel should have ignored Big Metal's position rings more than a little hollow. I conclude that filing an interpleader action was reasonable and prudent under the circumstances. Big Metal could have avoided the fee claim by promptly acquiescing in the turn over of the funds and pursuing its remedies with the IRS. It did not do so.

**B**

■ Big Metal argues that Pro–Steel should be able to recover from the $9,000 remaining fund only a pro rata share of Pro–Steel's overall fees and costs. In effect, this would mean that because Pro–Steel cannot recover fees and costs from the government, it cannot recover the allocable portion of fees and costs at all. This would impose the fees and costs on Pro–Steel—the innocent stakeholder—rather than on Big Metal, the party whose claim

caused the fees and costs to be incurred at all. The approach is inconsistent with the rationale under which an interpleader plaintiff—that is, an innocent stakeholder—is allowed to recover its fees and costs at all.

To be sure, at least one court has taken an approach similar to that suggested by Big Metal. *See S. Adams Sav. Bank v. Martel,* 540 F.Supp.2d 265 (D.Mass.2008). But even assuming the approach properly could be taken as a matter of discretion in an appropriate case, I decline to do so here. Big Metal could have avoided this litigation. Instead, it vigorously contested Pro Steel's right to turn over the funds to the IRS and contested the litigation until well into the process. Pro–Steel should be made whole—or as close to whole as possible from the limited remaining fund—for the fees and costs it reasonably incurred.

**C**

■ Big Metal asserts that Pro–Steel should not have filed the case in state court and that doing so caused unnecessary expense. But the state court had jurisdiction, and Pro–Steel had every right to file the case there. *See* 28 U.S.C. § 2410(a)(5) (waiving federal sovereign immunity in a state-court action "of interpleader or in the nature of interpleader with respect to … personal property on which the United States has or claims a mortgage or other lien"). It is hardly unusual for a plaintiff to choose to file a lawsuit in state court that a defendant will have a right to remove. At least ordinarily, doing so does not unreasonably increase the expense of the litigation.

Here the government chose—not surprisingly—to remove the case. But that caused little additional expense. Rare is the lawsuit that does not involve at least some procedural wrangling. It can hardly

be said that Pro–Steel made this litigation more expensive than it could or should have been.

### D

■ Big Metal asserts that Pro–Steel unreasonably incurred $1,041.90 in fees to obtain a default that was later set aside. *See* ECF No. 46 at 5 of 10. Incurring fees to obtain a default was not unreasonable. A plaintiff must prosecute its case. Obtaining a default is sometimes the cheapest way to do so. It was Big Metal that failed to file a timely response to the complaint; it can hardly complain that Pro–Steel proceeded accordingly. And in any event, the ultimate ruling in this order—that Pro–Steel can recover $9,000—would not change, even if the fees incurred to obtain the default were disallowed.

### IV

■ Pro–Steel claims attorney's fees of $11,863.61. I find that it reasonably incurred fees in this amount. I find that the claimed hours were reasonably devoted to the case; that the claimed rates are reasonable; that the overall fee is reasonable; and that the hours, rates, and overall fee are within the range that customarily would be charged by an attorney in this district for services of this kind.

I further find that Pro–Steel reasonably incurred costs of $430 for the filing fee and $57.50 for service of process for a total of $487.50. Because it makes no difference, I do not address the claim for copying and postage costs of $112.11.

Because the otherwise-recoverable fees and costs exceed the $9,000 available, this order awards fees and costs of $9,000.

### V

For these reasons,

IT IS ORDERED:

The clerk must disburse $9,000 plus interest—the remaining funds in the court registry after the disbursements directed by the orders of February 23, 2011 (ECF No. 37) and March 8, 2011 (ECF No. 42)—to the plaintiff Pro–Steel Buildings, Inc., as attorney's fees and costs. The clerk must enter judgment setting out all the disbursements and dismissing all remaining claims. The clerk must close the file.